937 A.2d 385

**PHILADELPHIA ENTERTAINMENT AND DEVELOPMENT PARTNERS, L.P. d/b/a/ Foxwoods Casino Philadelphia, Petitioner,**

**v.**

**CITY OF PHILADELPHIA, City Council for the City of Philadelphia, and Department of Licenses and Inspections of City of Philadelphia, Respondents.**

Supreme Court of Pennsylvania.

Submitted July 9, 2007.

Decided Nov. 20, 2007.

Order Denying Reargument Dec. 21, 2007.

470

Richard Douglas Sherman, Esq., Harrisburg, for amicus curiae Pennsylvania Gaming Control Board.

Michael Kenneth Coran, Esq., Glenn Aaron Weiner, Esq., Klehr, Harrison, Harvey, Branzburg & Ellers, L.L.P., Philadelphia, Eric G. Fikry, Esq., William G. Schwartz, Esq., Jeffrey Brent Rotwitt, Esq., Stephen David Schrier, Esq., Obermayer, Rebmann, Maxwell & Hippel, L.L.P., Philadelphia, for Philadelphia Entertainment and Development Partner, L.P., et al.

Ronald Frederick Brien, Jr., Esq., Brian Charles Vance, Esq., James W. Christie, III, Esq., Christie, Pabarue, Mortensen & Young, P.C., Spring City, for City Council for the City of Philadelphia.

Mark R. Zecca, Esq., Romulo Liberio Diaz, Jr., Esq., Abbe F. Fletman and Kevin M. Greenberg, City of Philadelphia Law Department, Philadelphia, for City of Philadelphia, et al.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

Chief Justice CAPPY.

This matter concerns the Emergency Petition for Review of Bill No. 070009 Passed by City Council for the City of Philadelphia on May 10, 2007 and of the City of Philadelphia's

Failure to Issue a Zoning and Use Registration Permit ("Petition") filed by Petitioner Philadelphia Entertainment and Development Partners ("PEDP") against Respondent City of Philadelphia ("Philadelphia") and Respondent Department of Licenses and Inspections of City of Philadelphia ("Department") (jointly, the "City"), and Respondent City Council for the City of Philadelphia ("City Council") (collectively, "Respondents"). In Count I of the Petition, PEDP asks that this Court review the constitutionality of a Philadelphia ordinance ("Ordinance") that changed the zoning designation of property ("Property") it owns and on which a licensed gaming facility has been located under the Pennsylvania Race Horse Development and Gaming Act ("Gaming Act" or "Act"), 4 Pa.C.S. § 1101 *et seq.* In Count II of the Petition, PEDP asks this Court for a writ of mandamus to compel the City to issue it certain zoning permits. For the following reasons, we conclude that Count I of the Petition is not ripe for adjudication, and that Count II of the Petition is not within this Court's jurisdiction. Accordingly, Count I of the Petition is dismissed without prejudice and Count II of the Petition is transferred to the Court of Common Pleas of Philadelphia County.

The following material facts as set forth in the Petition are undisputed. In July of 2004, the General Assembly enacted the Gaming Act, a statute that provides for slot machine gaming at a set number of licensed facilities within the Commonwealth. 4 Pa.C.S. § 1102. The Act established the Pennsylvania Gaming Control Board ("Board"), and empowers it to issue slot machine licenses at its discretion. 4 Pa.C.S. § 1202(b)(12). The Act provides for three types of slot machine licenses, designated by category. 4 Pa.C.S. § 1301. Each category permits an entity or person to apply to the Board for a license, and upon issuance, authorizes the placement and operation of slot machines at a licensed facility. *Id.* Under the Act, two Category 2 licensed facilities are to be located by the Board within a city of the first class. 4 Pa.C.S. § 1304(b). Philadelphia is a city of the first class, the only such city in the Commonwealth.

■■ Under the Act, only the Board makes the decision to locate a licensed facility. 4 Pa.C.S. §§ 1304(b)(1)1307; *Pennsylvania Gaming Control Board v. City Council of Philadelphia (PGCB v. City Council)*, 928 A.2d 1255, 1266–67 (2007) Once the Board's decision on location is made, it is to be implemented under and according to the zoning and land use provisions a city has enacted. *Id.* at 1269.

PEDP is a limited partnership and owns the Property, which is located in Philadelphia, between the Delaware River and South Christopher Columbus Boulevard, and between Reed and Tasker Streets. On December 28, 2005, PEDP applied to the Board for a Category 2 slot machine license in Philadelphia. In its application, PEDP proposed to locate a licensed facility on the Property. On that date, the Property was zoned as C–3 Commercial under The Philadelphia Code ("Code"), § 14–304. A C–3 Commercial designation permits a variety of commercial uses. *Id.*

In March of 2006, Philadelphia enacted an Ordinance adding Chapter 14–400 to that part of the Code that governs zoning and planning. Chapter 14–400 is intended to encourage the orderly development of major entertainment facilities in Philadelphia, including gaming facilities, through the establishment of "Commercial Entertainment District[s]" ("CEDs"). Under the Chapter, the developer of a lot in a CED submits a plan of development to Philadelphia's Planning Commission, which is reviewed for compliance with the regulations set forth in Chapter 14–400. The plan is also submitted for approval to City Council. City Council designates a CED by ordinance in appropriate areas of Philadelphia. Upon CED designation, all underlying zoning classifications on a piece of property are superseded. The developer submits a permit application to the Planning Commission. The Planning Commission reviews the application for compliance with the approved plan of development. Once the Planning Commission confirms compliance, the Department is authorized to issue the necessary building and zoning permits for the CED.

On December 20, 2006, the Board approved a Category 2 license in Philadelphia for PEDP. As part of this decision, the

Board approved the location of the licensed facility that PEDP proposed to establish on the Property.

On January 23, 2007, PEDP filed an application with the Department for a zoning and use registration permit ("C–3 Permit") under the Property's C–3 Commercial designation. PEDP sought the C–3 Permit for "construction of a new hotel with accessory conference/meeting facilities, and accessory garage, theater, restaurants (no take out), amusement arcade within LCB licensed areas, retail, offices and storage allowed in C–3 Commercial." (Exhibits to Petition at E). Later, PEDP asked that the application be amended to seek construction of an "amusement arcade within state licensed areas regulated either by the Pennsylvania Liquor Control Board or the Pennsylvania Gaming Control Board, including areas authorized for the conduct of gaming as defined an authorized by state law . . . ." (Exhibits to Petition at X).

On April 17, 2007, PEDP also commenced proceedings under the framework established by Philadelphia in Chapter 14–400 of the Code for developing licensed gaming facilities, submitting a plan of development ("CED Plan") for CED designation to the Planning Commission.

In the meantime, on January 23, 2007, Bill No. 070009 was introduced in City Council. Bill No. 070009 proposed to amend the Philadelphia Zoning Maps by changing the zoning designation of certain areas of land within an area bounded by Reed Street, Tasker Street (Extended), Christopher Columbus Boulevard, and the Delaware River from the existing designation, C–3 Commercial, to mostly R–10A Residential. Under Bill No. 070009, the zoning designation of the Property would change from C–3 Commercial to R–10A Residential. The R–10A–Residential designation is for residential development. Code § 14–205.

After holding hearings and receiving testimony on Bill No. 070009, City Council approved it on April 19, 2007. The Bill was sent to the Mayor of Philadelphia, the Honorable John F. Street. Mayor Street vetoed Bill No. 070009 on May 3, 2007. On May 10, 2007, City Council reconsidered Bill No. 070009

and voted to override the Mayor's veto. Accordingly, Bill No. 070009, as the Ordinance, became law.[1]

On June 1, 2007, PEDP filed the Petition and an Emergency Application for Summary Relief pursuant to Pa.R.A.P. 1532(b) and Request for Expedited Consideration with Exhibits. As of June 1, 2007, PEDP's application for the C–3 Permit and the CED Plan it submitted under Chapter 14–400 of the Code were pending.[2]

1.  The Ordinance reads:
    To amend the Philadelphia Zoning Maps by changing the zoning designation of certain areas of land within an area bounded by Reed Street, Tasker Street (Extended), Christopher Columbus Boulevard, and the Delaware River.
    *The Council of the City of Philadelphia Hereby Ordains:*
    Section 1.   Pursuant to Section 14–103 of the Philadelphia Code, the Philadelphia Zoning Maps are hereby amended by changing the zoning designation of certain areas of land within an area bounded by Reed Street, Tasker Street (Extended), Christopher Columbus Boulevard, and the Delaware River from the existing designations indicated on Map "A" set forth below to the zoning designation indicated on Map "B" set forth below.
    Section 2.   This Ordinance shall become effective immediately.
    (Exhibits to Petition at C)

2.  In their respective Briefs, the parties inform this Court that PEDP's application for the C–3 Permit and CED Plan have been acted upon since the Petition was filed. With respect to PEDP's application for the C–3 Permit, on August 17, 2007, the Department issued a notice of refusal, premised on the provision in the Code that states that a regulated use, such as an amusement arcade, cannot be located within 1,000 feet of another regulated use. Code § 14–1605–(4)(a). With respect to PEDP's CED Plan, the Planning Commission reviewed it, and on July 17, 2007, asked for additional information and voted to table consideration of the CED Plan to its next monthly meeting. On August 21, 2007, the Planning Commission approved the CED Plan. These particular developments have no effect on our disposition of the present Petition.
    We note that in connection with PEDP's application for a C–3 permit and the Department's August 17, 2007 notice of refusal, PEDP has filed two additional matters in this Court: (1) an Emergency Petition for Review of the Department of Licenses and Inspections of the City of Philadelphia's Decision Denying Application No. 84960 for a C–3 Commercial Zoning and Use Permit at Docket No. 143 EM 2007; and (2) an Emergency Application of Philadelphia Entertainment and Development Partners, L.P. d/b/a Foxwoods Casino Philadelphia for Exercise of King's Bench Jurisdiction by this Court over Appeal Now Pending in Zoning Board of Adjustment of City of Philadelphia from Department of Licenses and Inspections of City of Philadelphia's Decision Denying

In Count I of the Petition, this Court's jurisdiction is invoked under § 1506 of the Gaming Act. 4 Pa.C.S. § 1506. PEDP alleges that the Ordinance covers only the Property; that there is no residential use or residentially-zoned property adjacent to the Property; that there are no homes in relevant vicinities envisioned by the R–10A Residential designation; that the Ordinance is without a rational basis; that the Ordinance does not allow an authorized use under the Gaming Act and the Board's licensing decision; and that the Ordinance is an arbitrary and discriminatory action designed to subvert PEDP's rights to develop the Property as a licensed facility for gaming. Based on these allegations, PEDP contends that the Ordinance is unconstitutional because it constitutes spot zoning and special legislation. *See Realen Valley Forge Greenes Assn's*, 576 Pa. 115, 838 A.2d 718, 727 (2003) (citation omitted) (defining "spot zoning" as as a singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment and as an arbitrary exercise of police powers that is prohibited by our Constitution.); *Commercial Properties, Inc. v. Peternel*, 418 Pa. 304, 211 A.2d 514, 518 (1965) (quotation omitted) (It is impossible to escape the conclusion that the Rezoning Ordinance here involved was special legislation, unjustly discriminatory, arbitrary, unreasonable, and confiscatory in its application, in that it was aimed at this particular piece of property.)

In Count II of the Petition, this Court's jurisdiction is again invoked under 4 Pa.C.S. § 1506.[3] PEDP asks for a writ of mandamus compelling the City to issue it the C–3 Permit or CED permits under Chapter 14–400 of the Code, alleging that

Application No. 84960 for C–3 Commercial Zoning and Use Registration Permit and for Temporary Stay of Such Zoning Board Appeal Pending this Court's Decision to Assume Plenary Jurisdiction at Docket No. 144 EM 2007. The former is pending in this Court; the later was dismissed without prejudice by *per curiam* order dated October 16, 2007.

**3.** PEDP also invokes this Court's jurisdiction under 42 Pa.C.S. § 502. *See infra* n. 8.

it has a clear right to the permits and is without an adequate remedy at law.

On June 13, 2007, the City filed a Consolidated Motion to Dismiss in Opposition to Petition for Review and in Opposition to Application for Summary Relief, Including Preliminary Objections to both the Petition and the Application. On that date, City Council filed a Motion to Dismiss for Lack of Jurisdiction and as Premature Foxwood Casino's Emergency Petition for Review of Bill No. 070009 Passed by City Council for the City of Philadelphia on May 10, 2007 and of the City of Philadelphia's Failure to Issue a Zoning and Use Registration Permit; and in the Alternative, Preliminary Objection of Philadelphia City Council, and a Motion of Philadelphia City Council to Dismiss for Lack of Jurisdiction and as Premature Foxwood Casino's Emergency Application for Summary Relief Pursuant to Pa.R.A.P. 1532(b) and Request for Expedited Consideration; and in the Alternative, Preliminary Objection of Philadelphia City Council.[4]

We turn first to Count I of the Petition, and begin with issues raised by Respondents relating to the assertion PEDP in the Petition makes regarding application of the Ordinance. Specifically, PEDP alleges that since its January 23, 2007 application for the C–3 permit predated notice of the hearing on the Ordinance, its rights and application should be considered under the C–3 Commercial zoning designation, notwithstanding the changes made to the Property's zoning classification under the Ordinance.

Presently, Respondents do not dispute PEDP's assertion. Respondents represent that the Ordinance has not been applied, and that the Property's prior designation as C–3 Commercial, and not the R–10A Residential designation under the Ordinance, will be used to evaluate PEDP's permit application. In addition, the City points out that the Ordinance has no relevance in the process set forth in Chapter 14–400 for developing gaming facilities, since a

4. By order dated July 9, 2007, this Court ordered that this matter be submitted on briefs and granted PEDP's request for expedited consideration.

CED designation, when it occurs, supersedes all underlying zoning classifications. Even further, City Council states that "the [Ordinance] cannot be utilized in any manner to affect or otherwise interfere with [PEDP's] attempted plan to construct and operate a casino at the site[,]" and the City states that it has "never expressed any intention to apply this new R–10A designation to preclude development of [PEDP's] casino." (Brief for Respondent City Council for the City of Philadelphia at 18); (Brief of Respondents City of Philadelphia and Department of Licenses and Inspections at n. 9.)[5]

Based on these representations, City Council asserts that this Court's jurisdiction under § 1506 to review the Ordinance is not triggered or alternatively, that PEDP's challenge to the constitutionality of the Ordinance is not ripe. The City contends that so long as the Ordinance is not being applied to prevent gaming on the Property, the question of the Ordinance's constitutionality is irrelevant. PEDP counters that because the R–10A Residential zoning designation under the Ordinance may be applied in the future and would hinder the further development of the Property as a gaming facility or possibly affect its value, Respondents' representations and the fact that the Ordinance has not been applied have no bearing on whether the claim it makes in Count I should proceed.

▮▮▮▮▮ We begin with Respondent's contention that without application of the Ordinance to the Property, this Court is without the jurisdiction under § 1506 to hear Count I. As this Court has repeatedly stated, the question of subject matter jurisdiction is an inquiry into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs. *See, e.g., Heath v. Workers' Compensation Appeal Board,* 580 Pa. 174, 860 A.2d 25, 26

5. The City also points out in its Brief that the Mayor and City Solicitor have opined that the change in designation from C–3 to R–10A is "illegal with respect to its intended purpose of preventing development of a casino at the location [Property] . . . .", and accordingly, does not respond on the merits to PEDP's allegations that the Ordinance is unconstitutional. (Brief of Respondents City of Philadelphia and Department of Licenses and Inspections at n. 9.)

(2004). Jurisdiction over subject matter is conferred solely by the Constitution and the Laws of the Commonwealth. *Id.* at 29. Under Section 1506, "[i]n order to facilitate the timely implementation of casino gaming[,]" the General Assembly vested this Court with the exclusive appellate jurisdiction to consider appeals of a final order, determination or decision of a political subdivision involving zoning, usage and use of a licensed facility.[6] In *PGCB v. City Council,* we interpreted § 1506 to determine whether this Court had jurisdiction to consider a claim brought by the Board that a Philadelphia ordinance that placed a question on the ballot as to whether the Philadelphia Home Rule Charter should be amended to prohibit City Council and the Department from allowing the location of gaming within certain areas of Philadelphia was invalid. Applying the rules set forth in the Statutory Construction Act, we concluded that by its terms, § 1506 creates an appeal that may be taken from certain local actions, and that the ordinance was one such local action because it was a final order, determination or decision of a political subdivision involving the location of a licensed facility. *PGCB v. City Council,* 928 A.2d at 1264 (*citing* 4 Pa.C.S. § 1506). Our conclusion was guided by the words in § 1506 and their plain meaning, the General Assemblys express instruction in § 1506 to interpret the statute to facilitate the timely implementation of gaming, and the view that an interpretation of § 1506 that did not give this Court the exclusive authority to review an ordinance that impacts on an issue as fundamental as the actual establishment of the facilities in which licensed gaming will take place would make no sense, in light of the Acts other jurisdictional provisions. *Id.*

---

**6.** Section 1506 states in its entirety:

In order to facilitate timely implementation of casino gaming as provided in this part, notwithstanding 42 Pa.C.S. § 933(a)(2) (relating to appeals from government agencies), the Supreme Court of Pennsylvania is vested with exclusive appellate jurisdiction to consider appeals of a final order, determination or decision of a political subdivision or local instrumentality involving zoning, usage, layout, construction or occupancy, including location, size, bulk and use of a licensed facility. The court, as appropriate, may appoint a master to hear an appeal under this section.

4 Pa.C.S. § 1506.

In the present case, Count I of the Petition concerns the constitutionality of a Philadelphia ordinance. The Ordinance reflects a decision that Philadelphia made as to what zoning designation to give and what uses to allow to a parcel of land on which the Board has located a gaming facility under the Act. As such, Count I falls within the terms of § 1506. The fact that the Ordinance has not yet been applied to the Property changes none of this. Hence, we hold that this Court has jurisdiction over Count I of the Petition under § 1506.

Turning to the contention that Count I of the Petition is not ripe, we observe that while subject matter jurisdiction concerns the power of a court to hear a claim, the doctrine of ripeness concerns the timing of a courts intervention in litigation. *See Town of McCandless v. McCandless Police Assn.*, 587 Pa. 525, 901 A.2d 991, 1002 (2006). The basic rationale underlying the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. *Abbott Lab v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Whether the time is right to adjudicate a claim is an issue that the Pennsylvania courts consider. *See Town of McCandless*, 901 A.2d at 1002.

We have applied the ripeness doctrine in this particular context, declining to address claims challenging the constitutionality or validity of a zoning ordinance that has not been enforced or applied. Our rulings in this regard have been premised on policies of sound jurisprudence, namely, that the courts should not give answers to academic questions or render advisory opinions or make decisions based on assertions as to hypothetical events that might occur in the future. *See, e.g., Bliss Excavating Co. v. Luzerne County*, 418 Pa. 446, 211 A.2d 532 (1965) (dismissing as not ripe a claim that an ordinance that regulated the business of anthracite strip mining was unauthorized and preempted on the grounds that no attempt had been made to apply the ordinance against the plaintiffs mining operations); *Roeder v. Borough of Hatfield,*

439 Pa. 241, 266 A.2d 691 (1970) (dismissing as not ripe a claim of illegal spot zoning because no action had been taken under the ordinance).

In Count I, PEDP claims that the Ordinance constitutes unconstitutional spot zoning or special legislation because it represents an arbitrary exercise of power insofar as the rezoning from C–3 Commercial to R–10A Residential prevents the Property's use for gaming and its development as a licensed facility under the Gaming Act.[7] The Ordinance has not, however, been applied against the Property in this regard, and thus far, PEDP only anticipates the Ordinances application to hinder this use. Accordingly, we hold that Count I is not ripe for adjudication.

We turn to Count II of the Petition. In Count II, PEDP alleges that its application for a C–3 Permit and its other submissions comply fully with all of the Code's requirements, that issuance of the C–3 permit is a ministerial act on the part of the Department, and that PEDP has a clear right to CED designation of the Property by virtue of the Boards decision to locate a licensed facility upon it. PEDP further alleges that the City has no valid reason for not having issued it the permits PEDP needs, that the refusal to issue the permits has prevented it from moving forward with development of the Property as a gaming facility, and that it has no adequate remedy at law. Based on these allegations, PEDP requests a writ of mandamus from this Court, directing the City to issue a C–3 zoning and use registration permit or alternatively, a CED zoning and use registration permit.

---

7. In Count I, PEDP challenges the Ordinance as spot zoning and special legislation in a particular circumstance, that is, as it concerns the Property's designation as the location of a licensed facility and in terms of the Property's intended use for gaming. Count I, therefore, is an as-applied challenge to the Ordinance, not a facial challenge. We observe that the federal cases have discussed how the issue of ripeness differs depending on the nature of such challenges to a zoning ordinance. These cases indicate that while as-applied challenges require application of the ordinance to be ripe, facial challenges are different, and ripe upon mere enactment of the ordinance. *See, e.g., Eide v. Sarasota County*, 908 F.2d 716, 721 (11th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991).

Respondents argue that the terms of § 1506 do not give this Court the jurisdiction to grant the writ of mandamus that PEDP seeks in Count II. PEDP argues that § 1506 gives this Court the appellate jurisdiction or the original jurisdiction or the authority in aid of its appellate jurisdiction under § 1506 to issue the writ.

PEDP is mistaken. The jurisdiction Section § 1506 vests in this Court is appellate, not original. Moreover, § 1506 creates an appeal that may be taken from certain local actions that constitute a final order, or determination or decision of a political subdivision regarding certain aspects of licensed facilities. In *PGCB v. City Council,* we determined what the General Assembly meant in § 1506, stating:

> The [Statutory Construction Act] defines a political subdivision as [a]ny county, city, borough, incorporated town, township, school district, vocational school district and county institution district. The dictionary defines a determination as the act of coming to a decision or of fixing or settling a purpose[,] and a decision as the act or process of deciding; determination, as of a question or doubt, by making a judgment[;] the act or need for making up one's mind[;] something that is decided; resolution. *The Random House Dictionary of the English Language* 517, 541 (2nd ed.1987).

928 A.2d at 1264.

The allegations in Count II do not place a final order, or determination or decision of a political subdivision involving a licensed facility within the meaning of § 1506 before us. Rather, Count II is a traditional mandamus action. *See Commercial Properties,* 211 A.2d at 517 (affirming the order of the court of common pleas requiring issuance of certain grading and building permits to the plaintiff, and explaining that mandamus is an extraordinary writ which can issue only when plaintiffs have a clear legal right to the performance of a ministerial act by the defendant, whose duty it is to perform that act [W]here plaintiffs have a clear legal right to the issuance of a building permit, then mandamus is the proper means to compel the officials to issue it.). The jurisdiction

that § 1506 vests in this Court, however, does not encompass such an action.[8]  Accordingly, we hold that this Court does not have jurisdiction over Count II of the Petition under § 1506.

For all of the foregoing reasons, Count I of the Petition is dismissed without prejudice, and Count II of the Petition is transferred to the Court of Common Pleas of Philadelphia County and assigned to the Supervising Judge, Civil Section of the Trial Division of the Court of Common Pleas, First Judicial District, on an expedited basis.  *See* 42 Pa.C.S. §§ 931(a), 5103; Pa.R.A.P. 751.[9]  PEDPs Application for Summary Relief is dismissed without prejudice as to Count I and transferred to the Court of Common Pleas as to Count II. The

**8.**  PEDP also refers to our King's Bench powers as a means of seeking this Court's relief under Count II. 42 Pa.C.S. § 502 ("The Supreme Court shall have and exercise the powers vested in it by the Constitution of Pennsylvania, including the power generally to minister justice to all persons and to exercise the powers of the court, as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them, could or might do on May 22, 1722.").

We conclude that the matters raised in Count II of the Petition do not warrant the exercise of this Court's King's Bench powers.  *See PGCB v. City Council*, 928 A.2d at 1264 n. 6.

**9.**  With all due respect to our colleague who concurs, this majority opinion relies on, is guided by, and builds upon the principles announced by the majority in *PGCB v. City Council*, 928 A.2d at 1255; not on the views set forth in the dissent.

As to Count I, the doctrine of ripeness is indeed present in both cases. The context in which the doctrine arises in these cases, however, significantly differs.  In *PGCB v. City Council*, an ordinance was challenged on its face, for giving the Philadelphia electorate the opportunity to answer a question that it had no right to consider under a statute of statewide application.  Applying our precedent, we determined that judicial intervention was appropriate at the time of the ordinances enactment.  928 A.2d at 1265.  In this case, by contrast, a zoning ordinance is being challenged on an as-applied basis, but, has not yet been applied.  Once again, applying our precedent, we determine that judicial intervention is not appropriate at this point.  *See supra.* pp. 10–11.

As to Count II, given our interpretation of 4 Pa.C.S. § 1506 in *PGCB v. City Council*, it could not be clearer that this Court is not empowered to hear a traditional mandamus action.  928 A.2d at 1262–64 (explaining that the jurisdiction Section 1506 vests in this Court is appellate, not original, and that under 1506, an appeal may be taken from local actions that amount to a final order, or determination or decision regarding certain aspects of licensed facilities.)

City's Motion to Dismiss in Opposition to Petition for Review and in Opposition to Application for Summary Relief, Including Preliminary Objections to both the Petition and the Application is dismissed as moot. City Council's Motion to Dismiss for Lack of Jurisdiction and as Premature Foxwood Casino's Emergency Petition for Review of Bill No. 070009 Passed by City Council for the City of Philadelphia on May 10, 2007 and of the City of Philadelphia's Failure to Issue a Zoning and Use Registration Permit; and in the Alternative, Preliminary Objection of Philadelphia City Council and Motion of Philadelphia City Council to Dismiss for Lack of Jurisdiction and as Premature Foxwood Casino's Emergency Application for Summary Relief Pursuant to Pa.R.A.P. 1532(b) and Request for Expedited Consideration; and in the Alternative, Preliminary Objection of Philadelphia City Council are dismissed as moot.

Justice EAKIN and BAER, Justice BALDWIN and Justice FITZGERALD join the opinion.

Justice CASTILLE files a concurring opinion.

Justice SAYLOR concurs in the result.

Justice CASTILLE, concur.

I find myself in the position of agreeing with the Majority's hands-off approach in this gaming appeal, but at the same time having difficulty squaring the approach here with our recent interventionist decision in *Pennsylvania Gaming Control Bd. v. City Council of Philadelphia* ("*PGCB v. City Council*"), 928 A.2d 1255 (2007)—a case in which I was in a dissenting posture. My dissent in *PGCB v. City Council* concluded with the following prediction: "Failing to convince my colleagues of their fundamental error, I content myself with this dissent which, I trust, a future Court will vindicate." 928 A.2d at 1286 (Castille, J., dissenting). I did not expect said vindication to come so quickly, albeit so indirectly.

The Majority does not purport to disavow, or even to narrow, the decision in *PGCB v. City Council.* In my view,

however, it is difficult, if not impossible, to square today's decision with the majority view in *PGCB v. City Council*. This creates a jurisprudential conundrum for this author. Ordinarily, notwithstanding my dissent in *PGCB v. City Council*, principles of *stare decisis* would oblige me to follow the prevailing law. I could dissent here, and insist upon the logical application and extension of the prior decision. However, I am not particularly inclined to insist upon application of the earlier decision which I believe was erroneous—especially where the Court majority from the prior case fails to so insist. Moreover, it is becoming apparent that the Gaming Act cases, at least in their early stages, are *sui generis*. Perhaps, then, this case has simply revealed the **judicial** "fits and starts," *see Riverwalk Casino, LP v. Pennsylvania Gaming Control Board*, 592 Pa. 505, 926 A.2d 926, 953 (2007) (Castille, J., dissenting) that are inevitable in explicating a new review paradigm. I write separately precisely because I view today's decision as a departure from our recent precedent, and I believe that, in order to avoid confusion for the bench and bar, and to avoid unsettling the expectations of litigants, such departures, particularly from recent decisions, should be acknowledged and explained.

As a matter of statutory construction, I take no issue with the Majority's conclusion that this Court has jurisdiction, pursuant to Section 1506 of the Gaming Act, over PEDP's constitutional challenge to the Philadelphia zoning ordinance at issue. Majority Op. at 480, 937 A.2d at 392. The circumstances described by the Majority, unlike those in *PGCB v. City Council*, readily fall within the text of Section 1506. The Majority, however, disposes of PEDP's first claim as unripe for adjudication and its second claim as outside this Court's jurisdiction, an overall far more restrained jurisprudential approach than was applied in *PGCB v. City Council*. Hence my concurrence.

## I. *Count I: Ripeness*

The ordinance at issue here rezoned a parcel of land owned by PEDP, which was designated as a future site of a licensed gaming facility by the Pennsylvania Gaming Control Board

("the Board"), from commercial use to residential use. If enforced, this designation would preclude the gaming facility development envisioned by PEDP and approved by the Board. The Majority's ripeness analysis relies on the City's claim that the prior commercial entertainment district ("CED") designation supersedes all underlying zoning classifications, and the assertion by the City that it has "never expressed an intention to apply this new R–10A designation to preclude development of [PEDP's] casino." Majority Op. at 478, 937 A.2d at 390 (citing Briefs for Respondents).

While correct in its conclusion, the Majority makes no effort to square its analysis with *PGCB v. City Council*. That the Majority deems ripeness determinative in this case, while the Court quickly dismissed a similar argument in *PGCB v. City Council*, is perplexing. *See PGCB v. City Council*, 928 A.2d at 1265; *Id.* at 1283–1284 (Castille, J., dissenting). The jurisprudential disconnect arising from two such divergent and near-contemporaneous decisions presents a quandary to those who seek to make sense of this body of law.

The alleged harm in *PGCB v. City Council* was two steps removed from actuality, as opposed to a single promissory step in this case. In *PGCB v. City Council*, Philadelphia City Council passed an ordinance that would have allowed the electorate to participate in the legislative process by weighing in on a question concerning whether City Council should facilitate state-ordained slot machine gambling. The proposal would not have affected any gaming facility, or the statewide slot machine empire, unless (1) the electorate voted a certain way, **and** (2) City Council acted upon the measure thereby obstructing the implementation of the Board's statutory authority. This Court stretched the scope of "substantial and immediate interest" to find standing in the Gaming Board, an administrative agency, to suppress the electoral process and strike the ballot measure, reasoning that the mere passage of the ordinance providing for the ballot question was somehow an impermissible infringement upon the agency's rulemaking authority. *See PGCB v. City Council*, 928 A.2d at 1265–1266. Additionally, the majority held that the challenge to the ballot question in *PGCB v. City Council* was ripe for adjudication,

**before** any vote had been cast. *Id.* In the present case, we are faced with a challenge levied, not by a bureaucratic entity, but by the actual party awarded the casino license. That party has just seen its approved property reverse spot-zoned (*or so it says*) to prevent it from building the casino it was licensed by the Board to build. The obstructionist ordinance thus actually exists here, where the alleged obstruction had not yet come into existence in *PGCB v. City Council.* Yet this case is deemed unripe, Majority Op. at 483, 937 A.2d at 394, where the prior one was ripe-and so ripe as to warrant unprecedented interference with the democratic process to boot. The Majority's discussion on facial versus as-applied challenges does not change the fact that, in the real world, it is difficult to see how the challenge here is unripe if the ripeness holding in *PGCB v. City Council* is still deemed valid.[1] I concur in the result on ripeness only because I view today's decision as an implicit disapproval of *PGCB v. City Council.* What is unfortunate is that, if this Court was destined to be wrong in one of these cases, the error involved suppression of the people's bedrock right to express their opinion through the ballot.

## II.  *Count II: Section 1506 Jurisdiction*

In its analysis of Count II, the Majority again examines jurisdiction under Section 1506 and dismisses PEDP's petition

1.  Respecting the Majority's distinction between a facial challenge and an as-applied challenge, see Majority Op. at 481, n. 7, 937 A.2d at 392, n. 7, such is as much a matter of characterization as it is of substance. One could frame today's challenge as a facial challenge also merely by using the reasoning of *PGCB v. City Council*: given the city's initial zoning scheme, the Board's approval, and PEDP's development plan, the very presence of the new residential zoning classification, as well as the fact that it "spot-zones" PEDP's property, impermissibly infringes upon the rights of PEDP. One could, at the same time, as readily frame the challenge to the ballot question in *PGCB v. City Council* as an as-applied challenge: *i.e.,* the Board's authority could only have been impinged if the Philadelphia electorate voted a certain way. Furthermore, not only is it difficult to square the ripeness analysis here with that in *PGCB v. City Council,* but the Majority never addresses this Court's most recent (and unanimous) analysis of ripeness in *Township of Derry v. Pennsylvania Department of Labor & Industry,* 932 A.2d 56 (2007). Township of Derry, like this case, involved an existing, but not-yet-applied ordinance, yet the challenge was deemed ripe. *Id.* at 60 (finding actual harm suffered by the parties due to the uncertainty surrounding the enforcement of a challenged regulation).

for a writ of mandamus, interpreting Section 1506's jurisdictional grant as "appellate" rather than "original." With this reasoning, the Majority seems to implicitly overrule the jurisdictional approach in *PGCB v. City Council,* and adopt Mr. Justice Saylor's view in dissent in that case, a view which I joined.[2] Given my joinder in Justice Saylor's dissent, I obviously believe today's decision is the better reading of the statute. In my view, the Majority fails to adequately square today's conclusions with the analysis in *PGCB v. City Council.* Nevertheless, I believe the Majority decision is correct. Today's sound conclusion indirectly overturns a decision that rested upon a shaky foundation the day it was decided.

## ORDER

PER CURIAM.

**AND NOW,** this 21st day of December, 2007, it is hereby ordered that the Application for Reargument of Petitioner Philadelphia Entertainment and Development Partners L.P. d/b/a/ Foxwoods Casino Philadelphia and Request for Expedited Treatment is denied.

Justice CASTILLE and BAER file concurring statements.

Justice CASTILLE, concur.

On the current pleadings, I agree with the denial of the Application for Reargument. However, I would allow Petitioner Philadelphia Entertainment and Development Partners ("PEDP") the opportunity to amend the original filing in this matter to augment the record with additional and/or disputed facts that demonstrate that PEDP is in fact situated identically to the petitioners in *HSP Gaming L.P. v. Council for the City of Philadelphia,* 593 Pa. 358, 930 A.2d 1251 (2007). I would also retain jurisdiction.

---

**2.** Justice Saylor considered the challenge in *PGCB v. City Council* to be an original jurisdiction matter, recognized that Section 1506 addresses this Court's "appellate jurisdiction" and noted that if the General Assembly had intended the *PGCB v. City Council* majority's "radical alteration to conventional practice," it would have made use of the appropriate terminology. *PGCB v. City Council,* 928 A.2d at 1286 (Saylor, J., joined by Castille, J., dissenting).

Justice BAER, concur.

This Court being prohibited from considering facts not of record, *see Welsh v. Bulger,* 548 Pa. 504, 698 A.2d 581, 586 (Pa.1997) (citing, *McCaffrey v. Pittsburgh Athletic Association,* 448 Pa. 151, 293 A.2d 51, 57 (Pa.1972) (appellate court cannot consider anything which is not part of the record)), I join in the Court's *per curiam* Order denying the Application for Reargument of Petitioner Philadelphia Entertainment and Development Partners L.P. d/b/a/ Foxwoods Casino Philadelphia and Request for Expedited Treatment.