J-S21036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE ERNEST KROUT, JR. | : | |
| | : | |
| Appellant | : | No. 1574 MDA 2021 |

Appeal from the PCRA Order Entered November 5, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005716-2018

BEFORE: DUBOW, J., KUNSELMAN, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                    **FILED SEPTEMBER 08, 2022**

George Ernest Krout, Jr. (Krout) appeals from the order denying his first petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, entered in the Court of Common Pleas of York County (PCRA court). He argues that the PCRA court erred in denying his petition because his sentence for failing to register is illegal as he could not be required to

_____

* Retired Senior Judge assigned to the Superior Court.

register as a sex offender pursuant to Act 29[1] of SORNA[2] when he had no duty to do so because he was incarcerated for the pertinent time period and since Act 29 creates an irrebuttable presumption of dangerousness in violation of his fundamental right to reputation. We vacate and remand.

**I.**

On August 10, 2018, a police criminal complaint was filed against Krout for failing to register and provide updated address information. The Affidavit of Probable Cause alleged that he was convicted in November 1994 for a July 1994 Indecent Assault and was convicted in October 1996 for a June 1994 Involuntary Deviate Sexual Intercourse (IDSI). When he was released from prison in December 2017, he was required to register as a lifetime sexual

---

[1] On October 24, 1995, the first sex offender registration law known as Megan's Law, was enacted, and in 1999, the Supreme Court of Pennsylvania deemed substantial portions of it to be unconstitutional. ***See Commonwealth v. Williams***, 733 A.2d 593 (Pa. 1999). Megan's Law II was effective on July 10, 2000. After making amendments to Megan's Law, SORNA I became effective on December 20, 2012, and applied to convicted sex offenders already required to register and where prior sex offender registration requirements had expired. In ***Commonwealth v. Muniz***, 164 A.3d 1189, 1193 (Pa. 2017), the Court found SORNA I was an unconstitutional violation of offenders' *ex post facto* rights. On February 21, 2018, the General Assembly passed Act 10 of SORNA to address ***Muniz***. Act 10 split SORNA into two parts: revised Subchapter H, which applied to crimes committed on or after December 20, 2012; and Subchapter I, which applied to those crimes committed before December 20, 2012. On June 12, 2018, the General Assembly passed Act 29, re-enacting and amending SORNA (SORNA II) and it was immediately effective.

[2] Sexual Offender Notification and Registration Act, 42 Pa.C.S. §§ 9799.51-9799.75.

- 2 -

offender due to his multiple convictions of sexually violent offenses under Subchapter I of Sorna II. (**See** Police Criminal Complaint Affidavit of Probable Cause, 8/10/18).

On October 25, 2018, the Commonwealth filed an information formally charging Krout with Failure to Verify Address/Be Photographed and Failure to Register[3] to which he pled guilty on November 17, 2020. Before the plea was accepted, he completed a written colloquy in which he verified, in pertinent part, that he committed the crime and was not coerced into entering a guilty plea. (**See** Guilty Plea Colloquy, 11/17/20, at ¶¶ 18, 26, 36). At the guilty plea hearing, he confirmed that he failed "to verify [his] address and/or be photographed by authorities," as required. (Guilty Plea/Sentencing, 11/17/20, at 6). When asked if he knew he was supposed to verify his address with authorities, he responded in the affirmative and admitted that "Rockview, when they released me, they told me to go to the courthouse and register, do whatever, and I goofed up. … I got no problem with admitting that." (**Id.** at 6-7). Krout was sentenced to not less than 40 nor more than 80 months' incarceration. He did not file post-sentence motions or an appeal.

On March 23, 2021, Krout filed a PCRA petition *pro se*. Appointed counsel filed an amended petition on May 20, 2021. The amended petition contended ineffectiveness of counsel in failing to raise the SORNA II

---

[3] 18 Pa.C.S. § 4915.2(a)(2), (3).

challenges by allowing Krout to plead guilty because he had no duty to register because, at the time he committed the crimes, there was no registration requirement, as well as failing to challenge the constitutionality of Subsection I of Act 29 of SORNA II, which created an irrebuttable presumption of future dangerousness.

The PCRA court filed notice of its intent to dismiss the petition without a hearing on October 13, 2021. *See* Pa.R.Crim.P. 907(1). The petition was formally denied on November 5, 2021, and Krout timely appealed. He filed a concise statement of errors complained of on appeal pursuant to the court's order in which he raised the same three issues he claimed in his PCRA petition. *See* Pa.R.A.P. 1925(b).

On appeal, Krout again argues that the trial court erred in dismissing his petition because, although he admitted that he failed to comply with the registration provision of Subchapter I: (1) he had no duty to register under any version of Megan's Law or Subchapter I of SORNA II where his crimes were committed in 1994 and he was incarcerated until 2017; and (2) Subchapter I violates his fundamental constitutional right to reputation by creating an irrebuttable presumption of future dangerousness.[4] (*See* Krout's Brief, at 4, 9).

_____

[4] In the argument section of his brief, Krout makes two one-sentence allegations that trial counsel "was ineffective for failing to challenge Krout's
*(Footnote Continued Next Page)*

- 4 -

**II.**

**A.**

As a preliminary matter, the Commonwealth notes that Krout has waived his issues on several bases, including by failing to raise them at the earliest possible opportunity pursuant to Section 9544(b) of the PCRA and in failing to move to withdraw the guilty plea to Failure to Register or file a direct appeal. (*See* Commonwealth's Brief, at 8-9); *Commonwealth v. McGriff*, 638 A.2d 1032, 1036 (Pa. Super. 1994) ("Ordinarily, failure to petition to withdraw plea, combined with failure to pursue direct appeal will bar consideration of an attack on one's plea in collateral proceedings."); 42 Pa.C.S. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."). However, legality of sentence claims cannot be waived. *See Commonwealth v. McIntyre*, 232 A.3d 609 (Pa. 2020).

Krout entered a guilty plea at which he admitted to Failing to Register and did not claim that he had no duty to do so under Subchapter I. He did not file a motion to withdraw his guilty plea or file a direct appeal. However, we interpret his claim as a challenge to the legality of his sentence. In other

---

registration requirements at the time he was charged with Failure to Register." (Krout's Brief, at 16, 18).

words, he could not be found guilty and sentenced for Failing to Register pursuant to Subchapter I where he did not violate it and it is unconstitutional. Hence, we will review the merits of his claims.

**B.**

Krout first contends that the PCRA court erred in dismissing his petition because he was not required to register on or after April 22, 1996, but before December 20, 2012, when he was incarcerated during that period as required by SORNA II, and the obligation to register does not commence until after release from prison.[5, 6]

Megan's Law became effective on April 21, 1996, and required lifetime registration for individuals convicted of IDSI. **See** 42 Pa.C.S. § 9799.55(b).

---

[5] We note briefly that any argument that Krout is not required to register because he committed IDSI before Megan's Law was enacted fails. As observed by the PCRA court, in **Commonwealth v. Lacombe**, 234 A.3d 602 (Pa. 2020), the Pennsylvania Supreme Court held that Subchapter I of SORNA II is not punitive and, therefore, does not violate the *ex post facto* clause when applied retroactively. (**See** Rule 907 Notice, at 1). In **T.S. v. Pennsylvania State Police**, 241 A.3d 1091 (Pa. 2020), it extended **Lacombe** to reverse a finding that Subchapter I does not apply where the defendant's sex crimes occurred in 1980 before the enactment of any registration scheme. As a result, any claim that SORNA II does not apply because Krout committed the subject IDSI prior to the enactment of a registration statute fails.

[6] Krout's issues raise questions of law. "[O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. … [W]e apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. King**, 259 A.3d 511, 520 (Pa. Super. 2021).

- 6 -

Megan's Law II replaced Megan's Law I and became effective on July 10, 2000. As explained more fully in footnote 1, after several iterations of Megan's Law and SORNA, the General Assembly enacted SORNA II on December 20, 2012. Subchapter I of Act 29 provides that it applies to persons:

> (1) convicted of a sexually violent offense committed on or after April 22, 1996, but before December 20, 2012, whose period of registration with the Pennsylvania State Police, as described in section 9799.55 (relating to registration), has not expired; or

> (2) required to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired.

42 Pa.C.S. § 9799.52.

Krout argues he did not become a person "required to register" under Subsection (2) until he was released from prison, which was after December 20, 2012.[7] (*See* Krout's Brief, at 10-16). The Commonwealth responds that "whether [Krout] was a person **required** to register within the statutory framework is separate and apart from his **period** of registration and when it began." (Commonwealth's Brief, at 13).

In support of his position, Krout urges us to adopt the reasoning in the unpublished Commonwealth Court case, ***Smolsky v. Blacker***, 2019 WL 2400283, (Pa. Cmwlth. filed May 20, 2019) (unreported opinion), to support

---

[7] We agree with Krout's claim that he does not fit in Subsection (1) because his offense occurred in 1994 and we confine our review to that argument.

his position.[8]  In **Smolsky**, the petitioner argued that he was not required to

register under SORNA II because it was an *ex post facto* law under **Muniz**.

**Smolsky**, **supra** at *2.  The Commonwealth responded that **Muniz** did not

declare SORNA II unconstitutional, and that the conviction and release dates

are immaterial to the issue of whether Act 29 is constitutional.  **See id.**

Smolsky committed the subject crimes in 1987, was convicted in 1989

and sentenced in 1991.  He was released on parole in April 2017.  The

Commonwealth Court found that Subchapter I by its plain terms does not

apply to **Smolsky**, reasoning:

> First, he was not convicted of a sexually violent offense committed "on or after December 20, 2012," nor was he "convicted of a sexually violent offense committed on or after April 22, 1996, but before December 20, 2012."  42 Pa. C.S. §§ 9799.11(c), 9799.52(1).  Rather, it is undisputed that Mr. Smolsky was convicted in 1989 for offenses he committed in 1987.
>
> Second, Mr. Smolsky was not "required to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth on or after April 22, 1996,

---

[8] Both the Superior Court and the Commonwealth Court have implemented internal operating procedures that allow reliance on unreported decisions filed after a certain date for their persuasive value.  **See** Superior Court I.O.P. 65.37(B) (Superior Court may rely on unpublished memorandum decisions filed after May 2, 2019 for their persuasive value); Commonwealth Court I.O.P. 69.414(a) (Parties may cite to unreported Commonwealth Court panel decisions filed after January 15, 2008 for their persuasive value).  This Court is not bound by the decisions of the Commonwealth Court, but "such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate."  **Commonwealth v. Hunt**, 220 A.3d 582, 590 (Pa. Super. 2019) (citation omitted).  Instantly, it is appropriate for us to turn to our Commonwealth Court colleagues for guidance because Krout's claim is an issue of first impression in this Court.

but before December 20, 2012." 42 Pa. C.S. § 9799.52(2). A convicted sex offender's registration obligation does not begin until he or she is released from incarceration. **See** 42 Pa. C.S. § 9799.15(b)(1)(i)(A) and (B) (stating that a sex offender's period of registration "shall commence upon . . . release from incarceration in a State or county correctional facility" or upon "parole or a sentence of probation"). It is undisputed that Mr. Smolsky was released on parole in April 2017. Thus, even if Mr. Smolsky had been required to register under a prior version of SORNA, he would not have been required to register between April 22, 1996 and December 20, 2012 because he was still incarcerated during that period, as Mr. Blocker plainly acknowledges.

**Smolsky**, **supra** at *4-6.

However, **Smolsky** does not even have any persuasive authority because the *en banc* published opinion, **C.M. v. Pennsylvania State Police**, 269 A.3d 1280 (Pa. Cmwlth. 2022), decided after our Supreme Court issued its decisions in **Lacombe** and **T.S.**, rejected **Smolsky** and the same arguments presented here.[9]

_____

[9] In **C.M.**, the Commonwealth Court found its unreported panel decision in **Smolsky** to be "unavailing." **C.M.**, **supra** at 1285. It stated that **Smolsky** was not precedential and distinguishable because the PSP did not raise the arguments it did in **C.M.** and, therefore, the Court had not considered them in rendering its decision. The Court added that it had "expressly directed supplemental briefing on the applicability of the registration requirement in that case, but neither party provided any analysis in its supplemental brief that was helpful to the Court" and it was not its responsibility to argue on behalf of a party. **C.M.**, **supra** at 1285 (citing **Smolsky**, **supra** at *4 n.4 (stating that "[a]lthough they filed their supplemental briefs in a timely fashion, [the parties] failed to adequately address the question posed by this Court or to provide any meaningful legal analysis to assist this Court in deciding whether the provisions of [SORNA II] apply to Mr. Smolsky"). We are not persuaded by Krout's argument that we should ignore this explanation
*(Footnote Continued Next Page)*

In *C.M.*, the petitioner committed his relevant sexual crimes in 1987, was sentenced prior to the Megan's Law enactment and was released from prison in 2020. C.M. argued that Subchapter I did not apply to him because "he was first 'required to register' under Megan's Law II 'upon release' from prison in 2020," but "Subchapter I … applies only to offenders who were 'required to register ... on or after April 22, 1996, but before December 20, 2012.'" *C.M.*, *supra* at 1283. The Pennsylvania State Police (PSP) responded that the **obligation** to register arose when Megan's Law II became effective in 2000 while C.M. was incarcerated and did not exclude incarcerated individuals from the registration requirement. Hence, only the **duty** to register arose upon release from prison because, until that time, the person's address was known. *See id.*

Rather than adopt the plain language approach used in *Smolsky*, in *C.M.*, the Commonwealth Court distinguished when a defendant becomes **obligated** for lifetime registration from the **procedure** of how and when the performance of the obligation would begin. It found that, although a defendant would not be required to **perform** the registration obligation until release from prison, he was **obligated** upon conviction of a listed offense. *See C.M.*, *supra* at 1284-85.

_____

and we discern no reason to reach an opposite conclusion than the Commonwealth Court did on how to treat its own precedent.

- 10 -

The Court explained its reasoning, providing the pertinent legislative history, as follows:

Section 9795.1 of Megan's Law II was titled "Registration." Section 9795.1(b)(2) of Megan's Law II imposed a lifetime registration requirement on individuals convicted of listed offenses, including rape, one of the crimes of which C.M. was convicted. **Formerly** 42 Pa.C.S. § 9795.1(b)(2). … [N]othing in that provision excepted already-incarcerated individuals from its application. [**See id.**]

The point in time at which registration would begin, however, was contained in a separate section of Megan's Law II, Section 9795.2, titled "Registration Procedures and Applicability." **Formerly** 42 Pa.C.S. § 9795.2. Section 9795.2(a)(1) provided: "Offenders and sexually violent predators shall be required to register all current residences or intended residences with the [PSP] upon release from incarceration, upon parole from a state or county correctional institution, or upon the commencement of a sentence of intermediate punishment or probation." **Formerly** 42 Pa.C.S. § 9795.2(a)(1) (2000).

Reading Section 9795.1 and 9795. together, it is apparent that the obligation to register arose under Section 9795.1 upon the enactment of Megan's Law II with regard to individuals incarcerated for sex offenses on that date. Therefore, C.M., who was incarcerated on the effective date of Megan's Law II, became obligated for lifetime registration **on that date**.

By contrast, Section 9795.2, which expressly related only to registration **procedures**, merely provided the timing and mechanism of when and how performance of the registration obligation would begin. Thus, only C.M.'s duty to begin performing that obligation, not the obligation itself, arose upon his subsequent release. The date of his release was irrelevant to his registration obligation.

As discussed above, Subchapter I of SORNA II applies to individuals who were "required to register with the [PSP] under a former sexual offender registration law ... on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired." 42 Pa.C.S. § 9799.52(2). C.M. incurred a lifetime registration requirement upon the effective date of

> Megan's Law II in 2000, *i.e.*, after April 22, 1996, but before December 20, 2012. As a lifetime requirement, it has not expired. Accordingly, C.M. must register with the PSP for his lifetime.

***C.M.***, ***supra*** at 1284-85 (record citations omitted; emphases in original). We find the reasoning of ***C.M.***, relying on the history of Megan's Law II and SORNA II, to be persuasive.

Here, Krout was convicted of IDSI, an enumerated offense, on November 18, 1996, seven months after Megan's Law I was enacted. After it was found unconstitutional, Megan's Law I was replaced by Megan's Law II in 2000, which immediately imposed a lifetime registration requirement on Krout effective immediately. Hence, although his duty to begin **performing** his obligation arose upon his release, the **obligation** itself arose in 2000, *i.e.*, after April 22, 1996, and before December 20, 2012, for purposes of Subsection I of Act 29.[10]

Moreover, we agree with the Commonwealth's argument that to find otherwise would produce absurd results. (***See*** Commonwealth's Brief, at 13-

---

[10] A petition for allowance of appeal on this issue filed on February 28, 2022, in the Pennsylvania Supreme Court from the Commonwealth Court's decision in ***C.M. v. Pennsylvania State Police***, 269 A.3d 1280 (Pa. Cmwlth 2022), at docket number 25 MAP 2022. Krout invites us to hold our disposition in abeyance pending the Supreme Court's decision. However, we decline to do so as it is this Court's duty to apply the law as it exists at the time of rendering our decision. ***See Commonwealth v. Rightley***, 617 A.2d 1289, 1291 (Pa. Super. 1992).

14); *Lewis*, *supra* at 790 ("The legislature does not intend a result that is absurd and unreasonable."). As observed by *C.M.*:

> [T]he result of [Krout and] C.M.'s construction of Subchapter I would have absurd results. For example, if two persons committed sex offenses on the same day and were incarcerated at the same time, and one of them, who committed a less serious offense, was released before December 20, 2012, but the other, who committed the more serious crime, was not released until after December 20, 2012, [the petitioners'] reading of the statute would mean that the offender committing the less serious crime would have to register and the offender committing the more serious crime—and thus posing the more serious risk of harm to the public—would not. Such a result would directly contravene the legislative policy underlying both Megan's Law II and SORNA II to protect "the safety and general welfare" of Pennsylvania citizens. *Formerly* 42 Pa.C.S. § 9791(b); 42 Pa.C.S. § 9799.11(b)(1).

*C.M.*, *supra* at 1285-86 (record citations omitted). We agree with the above well-reasoned explanation.

For all of the foregoing reasons, we conclude that Krout is not entitled to relief on his first issue.

## C.

Krout next claims that he cannot be required to register because SORNA II creates an irrebuttable presumption of future dangerousness in violation of his fundamental constitutional right to reputation under the Due Process Clause of the Pennsylvania Constitution by creating an irrebuttable

presumption that he is at a high risk to commit another sexual offense.[11] (*See* Krout's Brief, at 16). He maintains registration encroaches on the protected reputation interest by "expos[ing] registrants to ostracism," the "high risk" designation is not universally true for all sex offenders and a reasonable alternative means exists for determining the risk of individual offenders. (*Id.* at 17-18).[12] In support of that conclusion, he cites in his brief to a study purportedly supporting his position.

In challenging the constitutionality of a statute, a party "must meet the high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution." *In re J.B.*, 107 A.3d 1 (Pa. 2014) (citation omitted). "[I]rrebuttable presumptions are violative of due process where the

---

[11] Article I, Section 1 of the Pennsylvania Constitution, Pennsylvania's due process clause, provides, "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and **protecting** property and **reputation**, and of pursuing their own happiness." (emphasis added).

[12] Subchapter I also establishes a website to be operated in conjunction with the statewide registry. The website publishes information about each registered offender including name and known aliases; year of birth; residence; the location of any schools attended by the offender; employment location; a photograph updated yearly; a physical description of the offender; the license plate number and a description of any vehicle owned or registered to the offender; a status report regarding whether the offender is compliant with SORNA; an indication of whether the offender's victim was a minor; a description of the offense committed by the offender; the dates of the offense and conviction; and the location of the offender's temporary shelter and whether the offender receives mail, if the offender is homeless. 42 Pa. C.S. § 9799.63(c).

presumption is deemed not universally true and a reasonable alternative means of ascertaining that presumed fact are available." ***In re J.B.***, 107 A.3d 1, 15 (Pa. 2014) (citation omitted).

Here, the PCRA court relied on our recent decision in ***Commonwealth v. Spears***, 253 A.3d 280 (Pa. Super. 2021) (unreported memorandum), to support its conclusion that Krout's irrebuttable presumption claim lacks merit. (See Rule 907 Notice, at 2) (pagination provided).  In ***Spears***, we rejected a claim that SORNA II violated any constitutional right to reputation because Subchapter I does not signal the dangerousness of any particular offender and merely provides that adult sex offenders, as a group, have a high risk of recidivism making a hearing on an offender's individual dangerousness irrelevant to the universal truth of the group as a whole.  We do not follow ***Spears*** reasoning for several reasons.

First, ***Spears*** is in conflict with our Supreme Court's holding in ***Commonwealth v. Torsilieri***, 232 A.3d 567 (Pa. 2020), where our Supreme Court explicitly recognized the claim that the registration requirements of SORNA II could be unconstitutional because, among other things, it violated an offender's fundamental constitutional right to reputation.  Determining instead that the factual record was not sufficiently developed in the trial court, our Supreme Court remanded "to allow the parties to address whether a consensus has developed to call into question the relevant legislative policy

decisions impacting offenders' constitutional rights." ***Torsilieri***, ***supra*** at 587.

Second, in ***Commonwealth v. Muhammad***, 241 A.3d 1149, 1155 (Pa. Super. 2020), in a precedential binding opinion, we held that a petitioner could raise both a facially and "as applied" challenge to SORNA II on the basis that the registration requirements were violative of an offender's constitutional rights.[13]  In that case, in holding that the offender made out her "as applied" challenge, we held that:

_____

[13] ***Muhammad*** observed:

> There are two types of constitutional challenges, facial and as-applied.  ***Commonwealth v. Brown***, 26 A.3d 485, 493 (Pa. Super. 2011).  A facial attack tests a law's constitutionality based on its text alone without considering the facts or circumstances of a particular case.  ***Id.***  The court does not look beyond the statute's explicit requirements or speculate about hypothetical or imaginary cases.  ***Germantown Cab Company v. Philadelphia Parking Authority***, 651 Pa. 604, 206 A.3d 1030, 1041 (2019).  An as-applied attack on a statute is more limited.  It does not contend that a law is unconstitutional as written, but that its application to a particular person under particular circumstances deprives that person of a constitutional right.  ***Brown***, 26 A.3d at 493.  "[W]hile as-applied challenges require application of the ordinance to be ripe, facial challenges are different, and ripe upon mere enactment of the ordinance."  ***Philadelphia Entertainment & Development Partners v. City of Philadelphia***, 594 Pa. 468, 937 A.2d 385, 392 n. 7 (2007).  It is permissible to raise both facial and as-applied challenges to a statute.  ***Id.*** (addressing both facial and as-applied challenges to tax ordinance).

***Muhammad***, ***supra*** at 1155.

"[R]eputation is an interest that is recognized and protected by our highest state law: our Constitution." ***R. v. Department of Public Welfare***, 636 A.2d 142, 149 (Pa. 1994) (citing Pa. Const., Art. I, § 1). It is beyond serious dispute that registration as a sex offender creates a presumption—indeed, a stigma—that Appellant is a dangerous adult who is likely to commit further sexual offenses. 42 Pa.C.S.A. § 9799.11(a)(4). This mark of disgrace profoundly affects her ability to obtain employment, education, and housing, which in turn impedes her ability to function as a productive member of society. Furthermore, SORNA fails to provide Appellant a meaningful opportunity to rebut the presumption that she is a danger to re-offend. She was automatically designated a Tier I sexual offender based on her convictions for interference and conspiracy, and she will not have any opportunity to challenge this designation or claim that she has been rehabilitated throughout the fifteen-year registration period. These factors convince us that SORNA, as applied to this case, creates an irrebuttable presumption that encroaches upon Appellant's constitutional interest in her reputation.

***Muhammad***, ***supra*** at 1158.

Because we are bound by the ***Muhammad*** holding that SORNA II may violate an offender's right to reputation, the PCRA court erred in holding that Krout cannot maintain a claim that its registration unconstitutionally violates his right to his reputation as applied.

Because the PCRA court dismissed Krout's PCRA petition without a hearing pursuant to Pa.Crim.R. 907(1), Krout was precluded from presenting any scientific evidence that SORNA registration requirements violated his due process rights. In ***Torsilieri***, where the defendant submitted expert affidavits citing scientific studies indicating that sexual offenders had low recidivism rates, our Supreme Court determined that "a hearing on the merits of the evidence" was necessary instead of "mere citations" to studies. Because no

- 17 -

evidence was allowed in the PCRA proceeding hearing, in accordance with *Torsilieri*, we vacate the order denying Krout's PCRA petition and remand for a hearing at which the parties can present evidence regarding the constitutionality of SORNA's registration requirements. *See Torsilieri*, *supra* at 596; *see also Commonwealth v. Asher*, 244 A.3d 27, 32 (Pa. Super. 2021) (concluding that remand was necessary based on *Torsilieri* because the defendant raised an irrebuttable presumption claim before the trial court, but the court declined to hold a hearing).[14]

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2022

---

[14] Finally, we note that although Krout has failed to raise it as an independent issue, he alleges that trial counsel was ineffective for "failing to challenge his registration requirements at the time he was charged with Failure to Register" on the bases raised in his brief. (Krout's Brief, at 16, 18). However, he provides no discussion or pertinent citation for these bald one-sentence claims, severely hampering our ability to conduct meaningful appellate review. See Pa.R.A.P. 2119(a) (an appellant's argument shall contain "such discussion and citation of authorities as are deemed pertinent."). Hence, we find these issues waived. *See Interest of D.C.*, 263 A.3d 326, 336 (Pa. Super. 2021) (finding waiver where appellant failed to provide citation to authority and record).