J-A03035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA DAWN KURP, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY MARK WEISHORN, | : | |
| | : | |
| Appellee | : | No.  920 WDA 2018 |

Appeal from the Order Entered May 17, 2018
in the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 757 of 2018

| | | |
|---|---|---|
| TIMOTHY MARK WEISHORN, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PATRICIA DAWN KURP, | : | |
| | : | |
| Appellant | : | No.  921 WDA 2018 |

Appeal from the Order Entered May 16, 2018
in the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 763 of 2018

BEFORE:  BOWES, J., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:                    **FILED APRIL 9, 2019**

Patricia Dawn Kurp appeals *pro se*[1] from the order entered on May 17,

2018, which denied her petition filed against Timothy Mark Weishorn pursuant

---

* Retired Senior Judge assigned to the Superior Court.

[1] Although Kurp is representing herself, she an attorney licensed to practice law in Pennsylvania and is a former law clerk for the Court of Common Pleas of Westmoreland County. *See* N.T., 5/14/2018, at 3.

to the Protection From Abuse (PFA) Act (the Act), 23 Pa.C.S. §§ 6101-6122. Kurp also appeals the order entered on May 16, 2018, which granted the PFA petition filed by Weishorn against Kurp. Upon review, we affirm.

We provide the following background. Weishorn is married to Kurp's daughter, from whom Kurp is estranged. On April 30, 2018, Kurp filed a PFA petition alleging that Weishorn "maliciously confronted [her] at the Penn Township Municipal Park (Field One) at the conclusion of a minor league baseball game involving [her] grandson, [Weishorn's] son." Kurp's PFA Petition, 4/30/2018, at 6 (numbering supplied). According to Kurp, she was attending the game to support her grandson and "was sitting quietly alone" when Weishorn "stormed up the hill where [she] was packing up [her] belongings and verbally threatened" her. *Id*. Kurp claimed that Weishorn told her she was "not welcome" and that she "would regret it" if she came again. *Id*. Kurp stated that this "verbal assault" caused her "to reasonably fear imminent serious bodily injury" because Weishorn prevented Kurp from leaving the field "by standing in front of [her] vehicle." *Id*. at 7. Kurp reported this incident to police prior to filing the PFA petition.

On May 1, 2018, Weishorn filed a PFA petition against Kurp. According to Weishorn, after Kurp filed her PFA petition against Weishorn, Kurp "showed up at [his] daughter's softball game knowing that [he is] an assistant coach and would be present. She proceeded to position herself [five feet] away from [his] daughter forcing [him] to leave." Weishorn's PFA Petition, 5/1/2018, at

5. Weishorn also stated that Kurp's ex-husband, Rod, informed Weishorn that Kurp "said she is buying bullets for her gun to protect herself against" Weishorn. *Id*. Weishorn also mentioned other incidents involving Kurp. First, he asserted that Kurp "attempted to lure [his] children … and continues to stalk them at any event she can find out where they are at." *Id*. He also stated that Kurp has "sent hundreds of t[e]xts and emails threatening to falsely expose" him, his wife, Rod, and Kurp's ex-husband's brother (Rick) "as child abusers."[2] *Id*.

The trial court held a hearing on both petitions on May 14, 2018.[3] *See* N.T., 5/14/2018. Kurp described the incident at her grandson's baseball game that led to her filing the PFA petition against Weishorn. She testified that she arrived at the game and positioned herself "apart from all of the others" and

---

[2] By way of background, throughout the petitions and hearing, references are made to many incidents that are ongoing and are the underlying cause of the family strife. Kurp believes that Rod's "family has a rampant and pervasive pedophilia problem." N.T., 5/14/2018, at 35. She believes that "[a]lmost every child [in that family] has been sexually abused by either [Rod's] father who is now deceased or" Rod's brother, Rick. *Id*. Furthermore, Weishorn is Rick's financial advisor, and Kurp believes this relationship endangers her grandchildren and makes Weishorn a "pedophile supporter." *Id*. at 37.

[3] This hearing is difficult to summarize. It began with Kurp calling Weishorn to testify "as a hostile witness." N.T., 5/14/2018, at 10, 54. Throughout this testimony, Kurp often acted as though she was the one testifying and the questioning devolved into irrelevant tangents. Then, Kurp testified in narrative fashion on direct examination. Weishorn was not permitted to cross-examine her. Finally, Weishorn called Rod to testify, and he was cross-examined by Kurp. Weishorn did not testify on direct examination. We focus our summary on the incidents cited by the trial court to grant and deny the PFA petitions.

- 3 -

"so far away" that she could not recognize her grandson playing. *Id*. at 56. She stated that after the game, Weishorn raced up the hill to reach her, and when he arrived, "his face was ruddy, red, he was breathing heavily, and he shouted … you are not welcome here." *Id*. Kurp stated that Weishorn further said to her that "nobody likes" her and "everybody hates" her. *Id*. Kurp claimed that when she was "starting to walk away, the first thing [Weishorn] said to [her] is, if you ever come back again to one of my children's activities, you will be sorry." *Id*. at 57. Kurp further claimed that Weishorn said, "I have kept Rick [] informed of all of your actions and locations." *Id*. Kurp continued to walk away, but Weishorn then stated, "I am going to speak to Rick about this and he will, quote, take care of you[.]" *Id*. Kurp testified that Weishorn then "intentionally stood in front of [her] car and … gave [her] the thumbs down action and repeatedly shouted that [she] was a loser." *Id*. at 58. Kurp testified that this incident "terrified" her, and she "called the police and reported the incident and then followed it up by filing the PFA." *Id*.

Weishorn also testified about this incident in response to Kurp's questioning. He testified: "I casually walked up to you. I asked you politely. I said, you are not welcome here. Those are the words I used. You started in a rampage of yourself and said, I can go anywhere I want at any time that I want. I pay taxes to this municipality." *Id*. at 37. Then, Weishorn testified that Kurp called him "a supporter of pedophiles." *Id*. Weishorn maintained that he never threatened Kurp during this incident. Kurp stated that

- 4 -

Weishorn's testimony was "false and [an] outright lie." *Id*. at 39. With respect

to her being afraid of Weishorn, Kurp testified as follows.

> I do legitimately have a fear of imminent serious bodily injury from
> [Weishorn]. I think he is extremely unstable. I have many
> concerns about the fact that he has exposed his children to a
> known pedophile. I have many concerns about the fact that he
> has taught his children to lie to their own mother, to lie to the
> Church. There are just various things. He's basically a con man….
> [H]e takes a certain pride in intimidating people and conning
> people. And I have a genuine concern for my grandchildren who
> I love more than anything.

*Id*. at 61-62.

With respect to Weishorn's petition, there was no dispute that Kurp went

to her granddaughter's softball game the day after having filed a PFA petition

against Weishorn. It was Weishorn's belief that Kurp knew he would be there.

Weishorn stated that "prior to 2017, [Kurp] attended every single sporting

event [his] kids were part of."[4] *Id*. at 24. Therefore, Weishorn believed that

Kurp knew he was an assistant coach and would be at the game. *Id*. at 27.

It was Kurp's position that she "was in a public place" and "purposely

positioned [her]self as far away from [Weishorn] as possible." *Id*. at 59. She

felt it was her "right" to see her grandchildren. *Id*.

Weishorn also testified regarding the statement about bullets.

According to Weishorn, Kurp said to Rod, I "am going to purchase bullets. I've

only had practice bullets at this point because I am going to protect myself

---

[4] It is evident from the record that something happened in the family in March
of 2017, which led to Kurp's no longer being permitted by Weishorn and Kurp's
daugther to be involved in the lives of Kurp's grandchildren.

against [Weishorn]." *Id*. at 18. Rod testified that Kurp told him that "[Weishorn] has threatened [her], it might be time [she has] to buy real bullets." *Id*. at 70. Kurp testified that "she intended to buy bullets to protect" herself, and she does own a gun. *Id*. at 60. However, she claims her goal "is to never shoot that gun." *Id*.

Weishorn also testified about an incident that occurred at the home of Rod's other daughter while Weishorn's children and nephew were at that home.[5] According to Weishorn, Kurp "tried to bang down the front door to get the kids, saying, these are my children, these are my children." *Id*. at 14. Weishorn testified that his "children were forced to leave the back porch" and had to go "up to the second floor in a bathroom" and lock the door. *Id*. at 15.

Although Kurp disputed this characterization of events,[6] Rod, who was present for the incident, corroborated Weishorn's version. Rod testified that Kurp demanded she be let into the house because she has "every right to see these kids." *Id*. at 66. Rod testified that his grandchildren were very frightened, and Rod was afraid Kurp would break the glass on the door due to her pounding. Eventually, police were called, and Kurp left. *Id*. at 67.

---

[5] It is undisputed that Weishorn was not present for this incident.

[6] Kurp stated that she "never attempted to pull the screen off the back door." *Id*. at 16.

Furthermore, Weishorn testified about an incident he reported to the police as "luring."[7] *Id*. at 23. According to Weishorn, Kurp was "sitting at [his] child's bus stop" and "said something from the car that was inaudible." *Id*. Weishorn testified that Kurp followed up with "an e-mail to [his] son on his cell phone saying that he's in great danger because of a secret that [Weishorn hasn't] told."[8] *Id*. Rod also corroborated this incident. According to Rod, he was walking to meet his grandchildren at the bus stop when he saw a "black vehicle sitting down there." *Id*. at 67. After the kids got off the bus, the car was moving slowly, and Rod realized it was Kurp. He heard Kurp yell something out of the car. According to Rod, Kurp said that "she had every right [] to see them." *Id*. at 68.

When Kurp questioned Weishorn about why he felt afraid of her, Weishorn testified that

> [she] has continued to send me and my wife and my father-in-law and my sister-in-law hundreds and hundreds of e-mails threatening to take my children away from me. And I'm fearful of that. She said she's going to do anything that she can in order to punish me for something I haven't done.

*Id*. at 17. For example, Kurp sent a text message to Rod[9] saying that she was going to purchase a billboard on Route 22 that has a picture of a person

---

[7] Again, it is undisputed that Weishorn was not present for this incident.

[8] Weishorn presented the trial court with the e-mail sent from Kurp to his son. Kurp did not object to the content of the e-mail being read aloud. *Id*. at 69.

[9] The content of this text was admitted into evidence. *Id*. at 70-71; see Weishorn's Exhibit B.

wearing a shirt saying, "beware child sexual abuser," and she would "photoshop [Weishorn] in as an emotional child abuser and pedophile supporter."[10] *Id*. at 71. In addition, Weishorn introduced a text from Kurp to Rod making fun of Weishorn for his filing a PFA petition in response to her PFA petition. *Id*. at 72; *see* Weishorn's Exhibit C.

With respect to Weishorn's petition, Kurp testified that she believed "it was purely retaliatory, that it was without merit, and that it was entirely motivated not by any threat of imminent bodily injury but the threat that [Kurp] was going to report him [for his association with a pedophile]." *Id*. at 41. Kurp maintained that Weishorn is "not afraid of [her] because of any threat of serious bodily injury. He is afraid of [her] because of a threat [she] might report his emotionally abusive behavior." *Id*. at 49.

At the close of the hearing, the trial court stated its findings of fact and conclusions of law on the record. First, the trial court concluded that it was denying Kurp's PFA petition because she did not meet her burden of proof. According to the trial court,

> [in] this situation [] I would have expected to see some witnesses who could come forward and testify to that type of conduct, without those types of witnesses, it's really a he said/she said type of situation. And so if anything puts it over the edge, then it would be the fact that [] Kurp appeared at the baseball game. And the fact that she would voluntarily place herself in the same area as [] Weishorn would argue against her being in reasonable fear of serious or imminent bodily injury.

_____

[10] Kurp stated "[t]hat was a joke" because she "obviously cannot afford a billboard." *Id*. at 70-71.

- 8 -

*Id*. at 96. With respect to Weishorn's petition, the trial court concluded that Weishorn satisfied his burden of proof based upon several separate incidents: Kurp's attempt to get into the home where her grandchildren were, the bus stop incident, and the e-mails and texts. In addition, the trial court pointed out that Kurp's appearance "at the baseball game shortly after having obtained a PFA against" Weishorn "shows actions that would not be expected from somebody who just obtained a PFA against somebody." *Id*. at 98. The trial court also considered "the statement about the bullets" in concluding that there was enough evidence to put "Weishorn in reasonable fear of bodily injury." *Id*. Thus, the trial court granted Weishorn's petition[11] and denied Kurp's petition.

Kurp timely filed notices of appeal from both orders.[12] The trial court ordered Kurp to file statements of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) in both cases, and Kurp complied. On August 15, 2018,

---

[11] Weishorn's petition was also granted on behalf of his wife and two children. *See* Order, 5/16/2018, at ¶ 8. In addition, the trial court reiterated the order from the temporary PFA petition that required her to relinquish her firearm to the sheriff. Order, 5/16/2018, at ¶ 6.

[12] Both orders were signed on May 14, 2018. The order granting Weishorn's petition was filed on May 16, 2018. The order denying Kurp's petition was filed on May 17, 2018. Thus, Kurp's June 15, 2018 notices of appeal were timely filed in both cases.

the trial court sent letters to this Court stating that the trial court will not be issuing a formal opinion.[13]  **See** Letter, 8/15/2018.

## **Weishorn v. Kurp**

On appeal,[14] Kurp sets forth five issues for our review in support of her position that the trial court should not have granted Weishorn's petition. We begin by addressing Kurp's first three issues together, wherein Kurp sets forth a litany of convoluted arguments. According to Kurp, the trial court committed

---

[13] Kurp points out that the trial court should have authored opinions in this case, rather than directing this Court to review the transcript. Kurp's Brief at 30 n.9.  Pennsylvania Rule of Appellate Procedure 1925(a)(1) provides that

> upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

Pa.R.A.P. 1925(a)(1).

Here, the trial court opinion offered some cursory legal conclusions and directed this Court to review the transcript. Letter, 8/15/2018.  Although our review of the transcript reveals the reasons the trial court granted Weishorn's PFA petition and denied Kurp's PFA petition, **see** N.T., 5/14/2018, at 96-100, an opinion in response to Kurp's Pa.R.A.P. 1925 statements would have certainly been more helpful.  We could remand this case for a trial court opinion. **See Commonwealth v. DeJesus**, 868 A.2d 379 (Pa. 2005) (remanding for a trial court opinion where trial court did not author one). However, because the trial court did offer rationale for its decision at the close of the hearing, we elect not to remand.  That being said, we do not condone the action of the trial court in this regard, and we hope the trial court in the future authors opinions consistent Pa.R.A.P. 1925(a)(1).

[14] Weishorn has not filed a brief for either appeal.

a number of errors regarding the admissibility of evidence and the credibility of witnesses. Kurp states that she does not suffer from "any mental disability whatsoever," and therefore the trial court should not have used this evidence in considering her credibility.[15] Kurp's Brief at 15. She claims that the trial court prohibited her from questioning Weishorn about protecting the children from Rick. *Id*. at 20. She suggests that Weishorn was conducting "a smear campaign designed to undermine [Kurp's] credibility and to dupe the court into thinking that [Weishorn] was the victim." *Id*. at 25. She contends that the trial court should not have relied on Rod's testimony due to his bias as Kurp's ex-husband. *Id*. at 29. She further claims that the trial court relied on emails not admitted into evidence. *Id*. at 34. Kurp then contends that she went to her granddaughter's softball game the following day "to regain her power and control." *Id*. at 38. Finally, she claims that her statement about purchasing bullets should not have been considered a threat because she offered good reasons for making that statement. *Id*. at 39. Thus, Kurp argues in conclusion that the trial court erred in finding that Weishorn sustained his burden under the statute. *Id*. at 42-49.

We review these issues mindful of the following. "In an appeal from a PFA action, this Court reviews the trial court's legal conclusions for an error of

---

[15] During the course of Weishorn's examination, Weishorn referred to Kurp as having "erratic behavior." N.T., 5/14/2018, at 27. Kurp then questioned whether Weishorn had any education or expertise in the mental health area. *Id*. at 45-47.

law or an abuse of discretion." **S.W. v. S.F.**, 196 A.3d 224, 230 (Pa. Super. 2018). In considering the aforementioned, we bear in mind that the PFA defines abuse as

> [t]he occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> ***
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. []

23 Pa.C.S. § 6102.

"In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury...." **Raker v. Raker**, 847 A.2d 720, 725 (Pa. Super. 2004). Furthermore, "[a]ssessing the [c]redibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." **S.W.**, 196 A.3d at 230. "This [C]ourt defers to the credibility determinations of the trial court as to witnesses who appeared before it." **McCance v. McCance**, 908 A.2d 905, 910 (Pa. Super. 2006).

Instantly, the trial court was well aware of the potential biases and motives of Rod and Weishorn, but concluded their testimony was credible. Furthermore, the trial court had the opportunity to view all witnesses, including Kurp, to make its determinations about whose version of events was

more credible. Here, the trial court concluded that it believed Rod and Weishorn. We will not disturb that conclusion.

Their testimony established that Kurp has engaged in a series of incidents in an attempt to gain access to her grandchildren against Weishorn's wishes. Kurp attempted to get into a house where her grandchildren were located, attempted to speak to one of the children at the bus stop, and appeared at her grandchildren's sporting events. We conclude that this evidence, as believed by the trial court, was sufficient to establish that Kurp engaged in a course of conduct "under circumstances which place [Weishorn, Kurp's daughter, and their children] in reasonable fear of bodily injury." 23 Pa.C.S. § 6102(5).

When reviewing Kurp's claims implicating the sufficiency of the evidence to support Weishorn's PFA petition, "this Court must view the evidence in the light most favorable to the verdict winner, granting [him] the benefit of all reasonable inferences." *S.W.*, 196 A.3d at 230.

> The reviewing court then determines whether the evidence was sufficient to sustain the tr[ia]l court's conclusions by a preponderance of the evidence. The preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence.

*Mescanti v. Mescanti*, 956 A.2d 1017, 1020 (Pa. Super. 2008).

Here, as detailed *supra*, Weishorn established by a preponderance of the evidence a course of conduct that amounts to abuse under the PFA statute, as well as a reasonable belief that Kurp may harm him or his children. Thus,

we agree with the trial court the evidence was sufficient and conclude that Kurp is not entitled to relief.

Next, Kurp then sets forth two ancillary issues. First, she claims that the trial court "erred by causing [her] home to be invaded and ordering the confiscation of [Kurp's] weapon in violation of the Fourth and Second Amendment to the United States Constitution." Kurp's Brief at 49. Kurp "recognizes the improbability that the facts of her particular case will solve the ongoing debate of whether PFA laws are in direct conflict with" constitutional rights. *Id*. at 50-51.

Kurp raises this issue for the first time in her Pa.R.A.P. 1925(b) statement. *See Steiner v. Markel*, 968 A.2d 1253, 1256 (Pa. 2009) ("Because issues not raised in the lower court are waived and cannot be raised for the first time on appeal, a 1925(b) statement can therefore never be used to raise a claim in the first instance."). Instantly, Kurp's weapon was confiscated after the entry of a temporary PFA order and prior to May 14, 2018 hearing. *See* N.T., 5/14/2018 (stating at the close of the hearing, "So that means I am not going to get my weapon back to protect myself against [Weishorn]?"). Thus, she had the opportunity to raise this constitutional issue before the trial court, and she neglected to do so. Accordingly, it is waived on appeal. Pa.R.A.P. 302(a).

Even if it were not waived, she would not be entitled to relief. Despite the fact that Kurp alleges the trial court erred, she does not request any

specific relief from this Court. Pennsylvania "courts should not give answers to academic questions or render advisory opinions." ***Philadelphia Entm't & Dev. Partners, L.P. v. City of Philadelphia***, 937 A.2d 385, 393 (Pa. 2007). Thus, no further discussion of this issue is necessary.

Kurp also argues that Weishorn "should be convicted of perjury." Kurp's Brief at 51. Specifically, she requests that Weishorn "be sentenced to pay the fine of $15,000.00 and that he be sentenced to the full amount of imprisonment permitted by statute." ***Id***. at 53. "Though a victim may seek a complaint against an alleged criminal, the district attorney is charged with the responsibility for the investigation and prosecution of any complaint which he approves." ***Commonwealth v. Malloy***, 450 A.2d 689, 691 (Pa. 1982). Thus, it is clear that neither the trial court nor this Court has the authority to convict anyone of perjury.[16] Accordingly, Kurp is clearly not entitled to relief on this basis.

Based on the foregoing, we conclude that the trial court neither erred nor abused its discretion in granting Weishorn's PFA petition against Kurp.

### *Kurp v. Weishorn*

We now turn to Kurp's issues with respect to the trial court's denial of her PFA petition. ***See*** Kurp's Brief at 53-60. In this section of her argument, Kurp directs this Court to review the arguments she set forth in support of her

---

[16] As a practicing lawyer, Kurp should know this basic rule of criminal jurisprudence.

- 15 -

prior claims that the trial court erred in granting Weishorn's petition. **See** Kurp's Brief at 56-60 (directing this Court to review certain paragraphs on pages 20, 21, 23, 24, 25-36, 38, 41, 42, 44, 45, 46, 49, 50, 52, 53, 56, 62-64, and 66).

"Although this Court is willing to liberally construe materials filed by a pro se litigant, *pro se* status confers no special benefit upon the appellant." **In re Ullman**, 995 A.2d 1207, 1211–12 (Pa. Super. 2010). "[A]rguments which are not appropriately developed are waived." **R.L.P. v. R.F.M.**, 110 A.3d 201, 208 (Pa. Super. 2015). This Court declines Kurp's invitation to comb through 31 pages of argument to find the issues she wishes to present on appeal. Thus, we conclude that Kurp has waived these issues on appeal.[17] **See Lackner v. Glosser**, 892 A.2d 21 (Pa. Super. 2006) (explaining appellant's arguments must adhere to rules of appellate procedure, and arguments which are not appropriately developed are waived on appeal).

Finally, Kurp argues that because Weishorn's petition was "frivolous and meritless," "he should be responsible for fully reimbursing [her] for all costs and fees for this appeal." Kurp's Brief at 60. Having determined that the trial court did not err in either granting Weishorn's petition or denying Kurp's

---

[17] Even if Kurp did not waive these issues on appeal, based upon the aforementioned standard for reviewing a trial court's decision in the PFA context, we conclude that the trial court neither erred nor abused its discretion. We agree with the trial court's conclusion that Kurp's attending a softball game on the day after filing a PFA petition against Weishorn, when she was aware that Weishorn might be present, called into doubt Kurp's contention that she was in imminent fear of bodily harm from Weishorn.

- 16 -

petition, we deny this request. ***See*** Pa.R.A.P. 2741(2) ("If an order is affirmed, costs shall be taxed against the appellant unless otherwise ordered.").

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/9/2019