J-S05006-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| WILLIAM C. HAYWARD, INDIVIDUALLY AND TRADING AND DOING BUSINESS AS, HAYWARD NATURAL RESOURCE, AND JACQUELINE WEINHOLD | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : : : | No. 794 WDA 2018 |
| LPR ENERGY, LLC, SUCCESSOR IN INTEREST TO CHEVRON U.S.A. INC., A CORPORATION; ANDRAY MINING COMPANY, A GENERAL PARTNERSHIP, AND MID-WEST OIL COMPANY, A CORPORATION | : : : : : : : | |

Appeal from the Order Entered April 27, 2018
In the Court of Common Pleas of Indiana County
Civil Division at No(s): 10599 CD 2013

| | | |
|---|---|---|
| WILLIAM C. HAYWARD, INDIVIDUALLY AND TRADING AND DOING BUSINESS AS, HAYWARD NATURAL RESOURCES, AND JACQUELINE WEINHOLD | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | No. 877 WDA 2018 |
| LPR ENERGY, LLC, SUCCESSOR IN INTEREST TO CHEVRON U.S.A. INC., A CORPORATION; ANDRAY MINING COMPANY, A GENERAL PARTNERSHIP, AND MID-EAST OIL COMPANY, A CORPORATION | : : : : : : : : : | |
| APPEAL OF: LPR ENERGY, LLC | : | |

J-S05006-19

Appeal from the Order Entered April 27, 2018
In the Court of Common Pleas of Indiana County
Civil Division at No(s): 10599 CD 2013

BEFORE: PANELLA, P.J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, P.J.: FILED DECEMBER 31, 2019

In these consolidated[1] cross-appeals,[2] the parties challenge the trial

court's allocation, following a bench trial, of royalties based on natural gas

leases.[3] Specifically, William C. Hayward, doing business as Hayward Natural

Resources, together with Jacqueline Weinhold, (collectively, "the Hayward

Interests,") assert that they own equal shares of an overriding royalty interest

("ORRI")[4] of 3.125% in leases on 11,000 acres of real property which they

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] This Court, per curiam, consolidated the cross-appeals sua sponte. See
Order, 7/19/18.

[2] The Hayward interests erroneously claim jurisdiction by virtue of 42
Pa.C.S.A. § 762, which provides for the jurisdiction of the Commonwealth
Court. See Appellants' Brief, at 1. This Court has jurisdiction by virtue of 42
Pa.C.S.A. § 742.

[3] Appellants purport to appeal from the order dated April 26, 2018. However,
an order is not final and appealable until it was entered on the docket, here,
April 27, 2018. See Pa.R.A.P. 301(a)(1) (providing generally that no order of
court shall be appealable until it has been entered on appropriate docket in
lower court). We have amended the caption accordingly.

[4] An ORRI is a "share of either production or revenue from production (free of
the costs of production) carved out of a lessee's interest under an oil-and-gas
lease. Overriding-royalty interests are often used to compensate those who

- 2 -

assigned to the Mid-East Oil Company. Mid-East Oil agreed to the ORRI, but did not inform successive assignees of the Hayward Interests's 3.125% reservation. The Hayward Interests did not record the ORRI reservation until over twelve years after the original assignment.

The court declared that LPR Energy, LLC ("LPR"), a later assignee, owed royalties to the Hayward Interests for leases on 1,987 acres of real property, which involved recorded assignments that referenced the ORRI, but not on another 10,860 acres, which did not. In its cross-appeal, LPR does not dispute the trial court's order on royalties owed for the 1,987 acres. However, it assigns error to the trial court's holding that the Hayward Interests's royalty interests were real property interests and not simply contract interests. LPR argues that the court erroneously awarded The Hayward Interests a perpetual right to receive royalty payments from it.

The trial court also decided that Andray Mining Company, another assignee, was not liable to pay The Hayward Interests a royalty. Andray Mining had made a loan of $750,000 to Mid-East Oil, taking Mid-East's reserved royalty rights as collateral. When Mid-East defaulted, Andray retained the

_____

have helped structure a drilling venture. An overriding-royalty interest ends when the underlying lease terminates." Black's Law Dictionary (8[th] Ed. 2004).

collateral. Andray requests that this Court affirm both the order of March 22, 2017 and the order dated April 26, 2018.[5]

The court also decided that Mid-East Oil Company, which originally agreed to the ORRI but failed to disclose it to assignees, had breached its contract with The Hayward Interests.  For this breach, the trial court entered a judgment against Mid-East Oil and in favor of the Hayward Interests, for thirty-five million, four hundred eighty-eight thousand, four hundred and nineteen dollars ($35,488,419.00), less any amounts paid by LPR. We affirm.

For the underlying facts of the case, we rely on the trial court opinion of March 22, 2017, and our independent review of the certified record.[6]  This case history is somewhat complicated, in part due to numerous assignments and reassignments of the various interests at issue, noted by the trial court as a common practice in the natural gas industry.[7]  The record describes

_____

[5] Andray has also filed an application to reconsider its previous application to quash Hayward's appeal due to alleged defects in the reproduced record filed by Hayward. We preliminarily denied the application without prejudice to Andray's right to re-file the application to this panel. As any defect in the reproduced record has not hindered our review of this matter, we deny the application to quash and therefore the application to reconsider.

[6] The trial court adopted its opinion of March 22, 2017, in support of its original order, as its Rule 1925(a) opinion on appeal.  See Order, 7/30/18; see also Pennsylvania Rule of Appellate Procedure 1925.

[7] See Trial Court Opinion, 3/22/17, at 38.

numerous assignments not at issue here. To the extent possible, we limit our review to the facts and issues directly relevant to the questions on appeal.

Beginning around 1996 and 1997, William C. Hayward, a certified geologist, began operating as Hayward Natural Resources, using publicly available geological data to identify certain properties in Clearfield County that held promise for the production of natural gas. See N.T. Trial, 11/1/16, at 90-91. He worked with Jacqueline Weinhold. See id. at 91. Weinhold acted as a petroleum land manager (also referred to as a leasing agent), to secure leases on properties in the area Hayward had determined to have favorable prospects. See id. at 10-11.

Once the Hayward Interests had secured leasing rights, they would endeavor to assign them to operators who could develop a working interest in the parcels to produce the natural gas. See id. at 89-90. Hayward testified that he and Weinhold intended to reserve ORRIs in the leases for themselves to derive passive income from the producing parcels without getting directly involved in the actual extraction and production process. See id. at 90.

On February 18, 1997, Hayward and Weinhold executed a "Drilling Agreement," with the Mid-East Oil Company.[8] See id. at 13-14, 94. Mid-East

_____

[8] Despite the title of the contract, as confirmed in the record, Appellants refer to the Drilling Agreement as "an agreement known as an Area of Mutual Interest Agreement (A.M.I.) . . . first entered into February 19, 1997." Appellants' Brief, at 7 (emphasis added). The trial court also refers to the "AMI Agreement." Trial Court Opinion, 3/22/17, at 3. Subsequent references and

Oil was owned by Mark Thompson, who was also its president.[9] The agreement

assigned the Hayward lease interests in a designated "agreement area," or

"area of mutual interest" ("AMI") in Clearfield County to the Mid-East Oil

Company.  See id. at 13-21.[10]

_____

cross-references confirm that the contract was actually signed, or at least became effective, on February 18, 1997, not February 19.

[9] Neither Mid-East Oil nor Thompson was present or represented at trial.  See Trial Court Opinion, 3/22/17, at 13, 35; see also N.T. Trial, at 4.  Neither Mid-East Oil nor Thompson submitted a brief on appeal.

[10] We note for background that :

> Within the oil and gas industry, oil and gas leases generally contain several key provisions, including the granting clause, which initially conveys to the lessee the right to drill for and produce oil or gas from the property; the habendum clause, which is used to fix the ultimate duration of the lease; the royalty clause; and the terms of surrender.
>
> \*   \*   \*
>
> Typically . . . the habendum clause in an oil and gas lease provides that a lease will remain in effect for as long as oil or gas is produced "in paying quantities." Traditionally, use of the term "in paying quantities" in a habendum clause of an oil or gas lease was regarded as for the benefit of the lessee, as a lessee would not want to be obligated to pay rent for premises which have ceased to be productive, or for which the operating expenses exceed the income.

Seneca Res. Corp. v. S & T Bank, 122 A.3d 374, 379–81 (Pa. Super. 2015) (citations omitted).

The original agreement provided that Hayward and Weinhold would receive "and split" a gross ORRI of 3.125% (fractionally, a one thirty-second interest), in each oil/gas producing well under lease in the agreement area "free from the costs of operation, transportation, maintenance, and/or abandonment." Drilling Agreement, 2/18/97. Specifically, the relevant paragraph provides:

> 3. Hayward and Weinhold shall receive and split 3.125% of 100% gross overriding royalty in each oil and gas producing wells [sic] drilled and produced from the above leases within the agreement area, free from the costs of operation, transportation, maintenance, and/or abandonment.

Id. at ¶3.

Weinhold testified she "believed" that she and Hayward drafted the agreement themselves, although she was not sure. N.T. Trial, 11/1/16, at 52.[11] The agreement also included Mid-East Oil's commitment to indemnify Hayward and Weinhold and hold them harmless from "any and all claims . . . resulting from Mideast [sic] Oil Company's operations on the leases within the agreement area." Drilling Agreement, 2/18/97, at ¶6.

On the same date, February 18, 1997, an "Assignment of Oil and Gas Lease" signed by William C. Hayward, as president of Hayward Natural Resources, (but not Weinhold), was notarized and recorded in Indiana County.

---

[11] Hayward's testimony is less explicit but also suggests he and Weinhold drafted the agreements themselves. See N.T. Trial, 11/1/16, at 95 ("Every word in those agreements was very deliberate."); see also id. at 110 ("I did my best to try to make them [the assignments] similar.").

- 7 -

Assignment of Oil and Gas Lease, 2/18/97, at the Indiana County Recorder's Office, Vol. 1824, pages 476-77. A date stamp confirms that the assignment was also recorded a month later in the Recorder's Office of Clearfield County, on March 19, 1997.

> The Assignment included the following parallel provision:
>
> Hayward hereby excepts and reserves unto itself an overriding royalty interest consisting of 3.125% of 100% [sic] of the gross income derived from the sale of all oil and/or gas produced and sold from the Subject Lease, and to be split between Hayward and Jackie [sic] Weinhold, [address omitted] and free from the costs of exploration, operation, transportation, maintenance, or abandonment.

Id. (unnumbered fourth paragraph).

The Assignment further provided: "This assignment is under and subject to an executed and unrecorded agreement between Hayward and Assignee [i.e., Mid-East Oil] dated February 18, 1997." Id. (unnumbered eighth paragraph).

Notably for the issues in this appeal, Hayward recorded certain assignments reserving to Hayward and Weinhold their shared ORRI of 3.125% of the gross production of any wells drilled on the leases subject to the assignments. See Trial Court Opinion, 3/22/17, at 3. However, to avoid revealing his business plans to competition, Hayward testified that he deliberately chose not to record the master AMI Agreement of February 18, 1997 (which was actually captioned the "Drilling Agreement"). See id.; see also N.T. Trial, 11/1/16, at 110-11; and Appellants' Brief, at 7. Subsequent

assignments included the notation that they were "under and subject to an executed and unrecorded agreement between Hayward and Assignee [Mid-East Oil] dated February 18, 1997." Trial Court Opinion, 3/22/17, at 3-4 (emphasis added).

On July 6, 2009, more than twelve years after the execution of the original agreement, Weinhold recorded the agreement (as revised June 17, 1998), between Hayward, Weinhold, and Mid-East, in the Clearfield County Recorder's Office. See N.T. Trial, 11/1/16, at 111. The trial court notes that the recording on July 6, 2009 is the only recording of the AMI Agreement. See Trial Court Opinion, 3/22/17, at 4.

The trial court identified seven different versions or amendments to the AMI Agreement, each expanding the inventory of leased properties included in the area of agreement. See Trial Court Opinion, 3/22/17, at 5.

Initially, Appellants received overriding royalties on several shallow gas wells (defined to be wells at depths of 5000 feet and above) through Mid-East Oil. However, in 2008 Mid-East made two partial assignments of natural gas interests for deep gas (defined as wells at depths below 5,000 feet) to Chief Exploration and Development, LLC ("Chief Exploration" or "Chief"), reserving overriding royalties to itself, but without notifying Chief Exploration of the ORRI reserved by Hayward. See Trial Court Opinion, 3/22/17, at 6. In both, Mid-East Oil warranted title to Chief. See id.

The trial court found that Hayward asked Thompson, the President of Mid-East Oil, to include the Hayward ORRI in such deep well assignments, but Thompson did not do so. See id. at 7. Chief did not conduct a full title search of the leasehold properties prior to the purchase. See id. Chief later assigned the leases and deep gas rights to Chevron, U.S.A. Chevron assigned the same interests to LPR Energy LLC. Hayward and Weinhold did not receive royalties. See id. at 8.

On October 3, 2008, Mid-East Oil assigned the ORRIs it had reserved for itself in the Chief Exploration assignments as collateral for a loan of $750,000 from another assignee, Andray Mining. Andray did not conduct a full title search, opting instead for a "Bring-down" or "Drop-down" search, an abbreviated search limited to the interval from the last full search to shortly before closing.[12]  See id. at 9, n.1. Here, Andray limited the search to the interval between the assignment from Mid-East Oil to Chief and the execution of the loan agreement. When Mid-East defaulted on the loan, Andray retained the royalty interests. See id. at 8.

_____

[12] At trial, David Prushnock, a partner in Andray Mining, testified that because Thompson was in immediate need of a loan for tax issues, and Chief had closed on its leases, Andray considered that it would be "prohibitive" to do a full title search of all the leases. N.T. Trial, at 155; see also id. at 153-55. Correspondence in the record before us confirms that Thompson felt under great pressure to make a quick loan. See Email from Mark Thompson to David M. Prushnock, 9/19/08. Andray did a drop down title search from the Chief closing only. See id. at 155.

Sometime after the assignment from Mid-East to Andray, Weinhold and Hayward became aware that they were not receiving royalty payments due under the ORRI. Weinhold wrote Chief, requesting payment. Chief denied liability. See id. at 9. On July 6, 2009, as previously noted, Weinhold recorded the June 17, 1998 agreement between Hayward, Weinhold, and Mid-East, in the Clearfield County Recorder's Office.

Hayward and Weinhold filed a complaint on April 17, 2013, seeking a declaratory judgment on their ownership of the ORRI royalty interests as prior and superior to those of Chevron, Andray, and Mid-East Oil.[13] See Complaint, 4/17/13, at 13-14. The complaint also claimed breach of contract by Mid-East Oil, seeking a judgment against Mid-East for the lease royalties. Hayward and Weinhold both testified at trial. Hayward and Andray also presented expert witnesses. As previously noted, neither Mid-East Oil nor Thompson was present or represented at trial. See Trial Court Opinion, 3/22/17, , at 13, 35; see also N.T. Trial, at 4. Neither Mid-East Oil nor Thompson submitted a brief on appeal.

After the trial, the court declared the Hayward Interests were entitled to a shared 3.125% overriding royalty from deep natural gas wells limited to the assignments between Hayward and Mid-East Oil that contained language referencing the grant of the ORRI to Hayward, specifically, 1,987 acres. See

_____

[13] LPR, successor assignee, was later substituted for Chevron as a party.

Order, 3/22/17. This award was to be paid by LPR. Notably, LPR was not liable for any royalties on the additional 10,860 acres.

The court also decided that Mid-East Oil had breached its contract to the Hayward Interests, and was liable for damages to be determined later. See Order, 3/22/17; see also Trial Court Opinion, 3/22/17, at 40. The Hayward Interests preserved their issues on appeal by filing timely motion for reconsideration of the partial, bifurcated verdict. The court subsequently fixed the damages at $35,488,419, after a hearing. See N.T. Hearing, 9/07/17; see also Order, dated April 26, 2018, filed 4/27/18.

This timely appeal followed the court's denial of reconsideration. LPR filed a timely cross-appeal pursuant to Pa.R.A.P. 121(e). Appellants filed a court-ordered statement of errors, on June 18, 2018.[14]

The Hayward Interests present two overlapping issues, framed as one question, on appeal:

> I. Did the trial court commit an error of law or abuse its discretion in failing to divest Appellee Andray Mining of the overriding royalty interest Appellants claim in the subject 11,000 acres in Clearfield County, as set forth in successive agreements between the parties, and failing to hold that Appellees were not bona fide purchasers for value?

Appellants' Brief, at 5.

LPR presents three questions on appeal:

---

[14] The trial court, as previously noted, adopted its opinion of March 22, 2017 in support of its original order, as its Rule 1925(a) opinion on appeal. See Order, 7/30/18; see also Pennsylvania Rule of Appellate Procedure 1925.

1. Did the [t]rial [c]ourt err in concluding that all of Hayward's interests involved in this action are real property interests, where the vast majority of them are contractual interests because they are interests in potential future production from gas wells, as opposed to production from an existing oil and gas lease?

2. Did the [t]rial [c]ourt err by declaring that Hayward's interests, and therefore LPR's obligations, existed without any limitation as to time, thereby aggrieving LPR?

3. Did the [t]rial [c]ourt err by crafting a remedy for Hayward that purportedly granted it a perpetual right to receive payments from LPR, without regard to any subsequent assignments or transfers of the interests in question, thereby aggrieving LPR?

LPR's Brief, at 3-4.

Andray Mining presents four questions on appeal:

1. Does Appellants' failure to appeal the April 26, 2018 Order determining that Andray was entitled to the Escrowed Funds being held by LPR Energy preclude the Appellants from arguing on appeal that Andray should be divested of its overriding royalty interest?

2. Is the Appellants' appeal of the declaratory judgment action improper as Appellants elected to pursue damages for breach of contract against Mid–East Oil, obtaining a judgment as set forth in April 26, 2018 Order of Court?

3. Did the court commit an error of law or abuse its discretion in holding that the Appellants' claims to its overriding royalty interests are limited to those assigned leases that Appellants made "subject to the AMI Agreement"?

4. Did the trial court commit an error of law or abuse its discretion when it found that Andray Mining Company owed no overriding royalty interests to Plaintiffs, as Andray's rights in the gas wells at issue derive from a reservation of overriding royalty interests wholly distinct and separate from Plaintiffs' unrecorded interest?

Andray's Brief, at 1.

- 13 -

In their appeal, the Hayward Interests assign error to the trial court's declaration that Andray is not liable for Hayward's ORRI. In support of this assertion, the Hayward Interests maintains that Andray, and the other assignees in between, had constructive notice of the ORRI. See Appellants' Brief, at 15. The Hayward Interests also argue that the subsequent assignees of the gas interests at issue were not bona fide purchasers for value because they "declin[ed] to conduct a full title search[.]" Id. at 17. They conclude the trial court's order should be modified to award them an overriding royalty interest in the 10,860 acres at issue. See Appellants' Brief, at 21. We disagree.

> Our scope and standard of review of these claims is well-defined.
>
> > Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner.

J.J. DeLuca Company, Inc. v. Toll Naval Associates, 56 A.3d 402, 410 (Pa. Super. 2012) (quotation marks, formatting, and citations omitted).

> Our standard of review for a declaration of rights is also well settled.
>
> > Under the Declaratory Judgments Act, the trial court is empowered to declare the rights and obligations of the parties involved. Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

Robson v. EMC Ins. Cos., 785 A.2d 507, 509 (Pa. Super. 2001) (citations and internal quotation marks omitted).

The trial court further decided that Mid-East Oil was in breach of contract. See Trial Court Opinion, 3/22/17, at 35-40.

> Whether a trial court properly interpreted a contract is a question of law and this Court's scope of review is plenary. We need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.

Liddle v. Scholze, 768 A.2d 1183, 1185 (Pa. Super. 2001) (citations omitted). "Moreover, when the terms of a contract are clear and unequivocal, meaning must be determined from the language itself." Beemus v. Interstate Nat. Dealer Servs., Inc., 823 A.2d 979, 982 (Pa. Super. 2003) (citation omitted).

> We also remain mindful of the following applicable legal principles:

> [A]n oil and gas lease reflects a conveyance of property rights within a highly technical and well-developed industry, and thus certain aspects of property law as refined by and utilized within the industry are necessarily brought into play. [Daset Mining Corp. v. Industrial Fuels Corp., 326 Pa.Super. 14, 473 A.2d 584, 592 (Pa.Super.1984)]; [Hutchison v. Sunbeam Coal [513 Pa. 192], 519 A.2d 385, 387 n. 1 (Pa.1986)] ('using the term 'lease' with regard to the conveyance of mineral rights 'is in some respects a misnomer' [because] what is really involved is a transfer of an interest in real estate, the mineral in place.').

> Nolt v. TS Calkins & Assocs., LP, 96 A.3d 1042, 1046 (Pa. Super. 2014).

> Furthermore, a lease is in the nature of a contract and is controlled by principles of contract law. It must be construed in accordance with the terms of the agreement as manifestly expressed, and the

accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement[.]

T.W. Phillips Gas & Oil Co. v. Jedlicka, 42 A.3d 261, 267 (Pa. 2012) (emphasis added; citations, quotation marks, and other internal punctuation omitted).

The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

Further, it is fundamental that one part of a contract cannot be so interpreted as to annul another part, and that writings which comprise an agreement must be interpreted as a whole.

Seneca Res. Corp., 122 A.3d at 380 (emphases added; citations, quotation marks, and other internal punctuation marks omitted).

"An oil and gas lease is considered a conveyance of a property interest."

Shedden v. Anadarko E. & P. Co., L.P., 136 A.3d 485, 489 n.4 (Pa. 2016)

The oil and natural gas rights are part of the land, and therefore have to be recorded. Although oil and gas rights may not be considered the same as other real estate interests for tax and other purposes, since granting an oil and gas lease limits the rights of a landowner who might buy the property, they must be on record to protect the owner against the claim of a bona fide purchaser.

- 16 -

Oil and natural gas leases have been recorded in this Commonwealth since at least the 1890's. See Thompson v. Christie, 138 Pa. 230, 20 A. 934 (1890). Duquesne Natural Gas Co. v. Fefolt, 203 Pa. Super. 102, 198 A.2d 608 (1964) reiterates the fact that Pennsylvania considers such gas "leases" to be, in reality, transfers of realty. . . . The Commonwealth Court also recognizes that an oil and gas lease such as is at issue here is statutorily required to be recorded. See In re Correction of Official Records with Civil Action. Appeal of Energy Explorations, 44 Pa. Cmwlth. 511, 404 A.2d 741, 742 (1979). Additionally, 23 P.S. § 351 requires all transferences of real property to be recorded or "they shall be judged fraudulent and void as to any subsequent bona fide purchaser. . . ."

\* \* \*

The purpose of recording such leases is to provide the public with proper assurances of exactly what, if anything, is being transferred along with the title to the property. There is no point in recording such information if the buyer is not entitled to rely upon such information.

A bona fide purchaser is one who buys real or personal property without notice of claim of others' outstanding rights in the property.

Lesnick v. Chartiers Nat. Gas Co., 889 A.2d 1282, 1284–85 (Pa. Super.

2005) (footnote omitted). The relevant statutes provide as follows:

All agreements in writing relating to real property situate in this Commonwealth by the terms whereof the parties executing the same do grant, bargain, sell, or convey any rights or privileges of a permanent nature pertaining to such real property, or do release the grantee or vendee thereunder against damages which may be inflicted upon such real property at some future time, shall be acknowledged according to law by the parties thereto or proved in the manner provided by law, and shall be recorded in the office for the recording of deeds in the county or counties wherein such real property is situate.

21 P.S. § 356 (emphasis added); see also 21 P.S. § 351.

The legal effect of the recording of such agreements shall be to give constructive notice to subsequent purchasers, mortgagees, and/or judgment creditors of the parties to said agreements of the fact of the granting of such rights or privileges and/or of the execution of said releases, and the rights of the subsequent purchasers, mortgagees, and/or judgment creditors of the parties to said agreements shall be limited thereby with the same force and effect as if said subsequent purchasers, mortgagees, and/or judgment creditors had actually joined in the execution of the agreement or agreements aforesaid.

21 P.S. § 357 (emphasis added).

All deeds and conveyances, which, from and after the passage of this act, shall be made and executed within this commonwealth of or concerning any lands, tenements or hereditaments in this commonwealth, or whereby the title to the same may be in any way affected in law or equity, shall be acknowledged by the grantor, or grantors, bargainor or bargainors, or proved by one or more of the subscribing witnesses thereto, before one of the judges of the supreme court, or before one of the judges of the court of common pleas, or recorder of deeds, prothonotary, or clerk of any court of record, justice of the peace, or notary public of the county wherein said conveyed lands lie, and shall be recorded in the office for the recording of deeds where such lands, tenements or hereditaments are lying and being, within ninety days after the execution of such deeds or conveyance, and every such deed and conveyance that shall at any time after the passage of this act be made and executed in this commonwealth, and which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valid consideration, or any creditor of the grantor or bargainor in said deed of conveyance, and all deeds or conveyances that may have been made and executed prior to the passage of this act, having been duly proved and acknowledged as now directed by law, which shall not be recorded in the office for recording of deeds in the county where said lands and tenements and hereditaments are lying and being, within ninety days after the date of the passage of this act, shall be adjudged fraudulent and void as to any subsequent purchaser for a valid consideration, or mortgagee, or creditor of the grantor, or bargainor therein.

21 P.S. § 444 (emphasis added); accord, 21 P.S. § 351 § 351, Failure to record conveyance, ("shall be adjudged fraudulent and void as to any subsequent bona fide purchaser . . .").

Here, the Hayward Interests acknowledges that "the central issue in this matter concerns the legal implications of an unrecorded agreement . . . governed by Pennsylvania's recording statutes." Appellants' Brief, at 15 (emphasis added).

Nevertheless, citing a plethora of purportedly applicable precedents, the Hayward Interests chiefly argue that Appellees failed in their duty as lease assignees to exercise due diligence, by doing incomplete title searches. Therefore, the Hayward Interests maintain, the assignees were not entitled to the protection of bona fide purchaser status. Furthermore, the Hayward Interests assert Appellees were bound by constructive notice of the unrecorded assignments. The Hayward Interests conclude that they should be declared owners of the ORRI to the additional 10,860 acres of the real property at issue. See Appellants' Brief, at 14-21. We disagree.

The fatal flaw of the Hayward Interests's argument is their conceded failure to record the assignments in a timely manner as required by statute. See 21 P.S. § 356 ("All agreements . . . shall be recorded . . ."); see also 21 P.S. § 351. Because they intentionally declined, for an assumed competitive advantage, to record their interest in the leases (until twelve years later), the Hayward Interests had no legal right to claim the benefit of

constructive notice imputed to the assignees. An owner of a property interest is entitled to impute constructive notice to a subsequent purchaser for value if it complies with the recording statute, not by disregarding it. To the contrary, a non-recorder's interest in a property "shall be adjudged fraudulent and void against any subsequent purchaser." 21 P.S. § 444 (emphasis added).

None of the case law about due diligence proffered by the Hayward Interests supports the proposition that a defective title search by an assignee excuses or exonerates a willful non-recorder for failure to comply with the recording statute.

Moreover, "the burden of proving that a purchaser for value had constructive notice of facts not appearing in the record is upon him who asserts it." Lund v. Heinrich, 189 A.2d 581, 585 (Pa. 1963) (emphasis added). Here, we conclude that Appellants fail to meet this burden.

The Hayward Interests maintain that the assignees had constructive notice of the unrecorded assignments by virtue of the following language in the assignment: "[t]his Assignment is under and subject to an executed and unrecorded agreement between Hayward and Assignee dated February 18 and March 26, 1997 . . . ." Appellants' Brief, at 19 (emphasis added). We disagree.

Initially, we note that the Hayward Interests's argument would have this Court adopt the exact opposite of the statutory recording scheme. Instead of giving a party who recorded an interest in property the benefit of constructive

notice of the encumbrance, the Hayward Interests maintain, in effect, that the benefits should go to a party, like Hayward, that refuses to record. We cannot agree.

In any event, the Hayward Interests' due diligence argument would require this Court to accept the implicit but necessary contention that they would have voluntarily provided on request to a hypothetical diligent searcher the very documents they refused to record in the first place. We find no basis in the record or under controlling authority for such self-serving after-the-fact speculation.

Because the Hayward Interests did not comply with the requirements of the recording statute, they are not entitled to the presumption of constructive notice. They have failed to meet their burden to prove that later purchasers for value were on constructive notice of facts not appearing in the record. The trial court properly declined to declare Appellants were entitled to claim royalties in the approximately 11,000 acres in Clearfield County. The Hayward Interests's claim challenging the declaratory judgment does not merit relief.

Moreover, as noted, Mid-East Oil declined to participate in the trial, leaving both of the Hayward Interests' claims against it (the demand for a declaratory judgment and the breach of contract claim) uncontested. Accordingly, we deem any defense for Mid-East Oil abandoned.

In their complaint, the Hayward Interests also alleged breach of contract. However, in their brief, the Hayward Interests failed to develop a

separate argument on the breach of contract issue. See Appellants' Brief at 14-21. Nevertheless, in addition to ruling on the claim for a declaratory judgment, the trial court undertook a merit analysis of the Hayward Interests' breach of contract claim. See Trial Court Opinion, 3/22/17, at 35-40.

Briefly summarized, the trial court reasoned that even though the contract at issue had missing terms, the court could supply necessary terms under the doctrine of necessary implication.

> Under the doctrine of necessary implication, in the absence of an express provision, the law will [imply] an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

Glassmere Fuel Serv., Inc. v. Clear, 900 A.2d 398, 402–03 (Pa. Super. 2006).

Here, finding that Mid-East Oil had an implied duty to pay the ORRI to Appellants, and a duty to inform new leaseholders of the ORRI, the trial court concluded that Mid-East had breached its contract with the Hayward Interests. On independent review, we agree with the result reached by the trial court.

However, on independent review, we conclude that application of the doctrine of necessary implication is unnecessary. The agreements created by Hayward may have been inartfully drafted. Nevertheless, in the master contract (Drilling Agreement) between Hayward, Weinhold and Mid-East Oil, paragraph 3 expressly reserves a 3.125% royalty for the Hayward Interests.

Paragraph 5 plainly provides that "Mid-East Oil Company shall become responsible for the payment of all rentals and royalties[.]" And Paragraph 6 explicitly requires Mid-East Oil to indemnify and hold Hayward and Weinhold harmless for "any and all claims" etc. Drilling Agreement, 2/18/97, ¶ 3, 5, and 6.

We determine that these terms of the Drilling Agreement established an unambiguous requirement for Mid-East Oil to pay the reserved royalty to the Hayward interests or to inform subsequent assignees that the royalties have been reserved and must be paid, at the risk of having to indemnify Hayward itself.

Moreover, Mid-East Oil abandoned any defense to breach of contract by its failure to participate in the trial or to respond to this appeal. Application of the doctrine of necessary implication is not required. In any event, it would yield the same result. On the merits, the trial court correctly found that Mid-East Oil was in breach of contract.

In its issues on appeal, Cross-Appellant LPR asserts that the trial court erred by concluding that all of the Hayward Interests' claims are real property interests even though the "vast majority of them are contractual interests[.]" LPR's Brief, at 3. We disagree.

First, we note our agreement with the trial court's conclusion that LPR's main argument, that contractual interests, not real property interests, are at issue, is irrelevant to the disposition of this appeal. See Trial Court Opinion,

3/22/17, at 24-25; see also LPR's Brief, at 20-25. The trial court properly concluded that the dispositive issue is compliance with the recordation statute. See Trial Court Opinion, 3/22/17, at 25.

Moreover, it is well-settled that, contrary to LPR's either/or supposition, oil and gas leases involve both real property interests (requiring recordation), and contractual interests. See Nolt, 96 A.3d at 1046, Hutchison v. Sunbeam Coal, 519 A.2d at 387 n.1; T.W. Phillips Gas & Oil Co., 42 A.3d at 267; Shedden v. Anadarko E. & P. Co., L.P., 136 A.3d at 489 n.4; and Lesnick, 889 A.2d at 1284–85. LPR's first issue does not merit relief.

LPR's second and third issues challenge the duration of the royalties payable to Hayward. See LPR's Brief, at 20-25. LPR maintains, "the AMI Agreement is void or voidable as a perpetual contract." These issues are implicitly premised on LPR's meritless argument that the trial court erred in ruling that the leases at issue represented interests in real property, and not merely contractual claims. The trial court ruled correctly.

LPR also claims that it would be obligated to pay an ORRI "even if those leases are subsequently assigned to someone else." Id. at 25. LPR's argument is not only dependent on its erroneous contract-only premise, it is also hypothetical, undeveloped beyond the mere bald assertion, and unsupported by reference to any controlling authority. See id.

Courts should not give answers to academic questions or render advisory opinions or make decisions based on assertions as to hypothetical

events that might occur in the future. See Philadelphia Entm't & Dev. Partners, L.P. v. City of Philadelphia, 594 Pa. 468, 480, 937 A.2d 385, 392 (Pa. 2007). LPR's hypothetical question does not establish any grounds for relief. LPR's second and third claims merit no relief.

Finally, Andray Mining has filed what amounts to a defensive brief, which in pertinent part simply asks this Court to affirm the orders of the trial court. See Andray Mining's Brief, at 13. The trial court found that Andray was not liable to the Hayward Interests because the royalties reserved by Mid-East Oil and pledged as collateral were separate and distinct from the royalties claimed by the Hayward Interests. We agree.

Because we do affirm, and the trial court's decision on royalties is in favor of Andray Mining, Andray's remaining claims are moot. "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." Selective Way Ins. Co. v. Hosp. Grp. Servs., Inc., 119 A.3d 1035, 1040 (Pa. Super. 2015) (citation omitted). We need not address Andray's remaining questions and we decline to do so.

Our reasoning differs somewhat from that of the trial court. However, "[i]t is well-settled that we may affirm the trial court's order on any valid basis." Seneca Res. Corp., 122 A.3d at 387. (citation omitted).

Judgment affirmed. Application to reconsider order denying quashal denied.

Judge Nichols joins the memorandum.

Judge Strassburger files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/31/2019